## JEWETT *et al.* v. SUNDBACK, Sheriff.

1. Entries made by a justice of the peace in his docket in pursuance of Section 6123, Comp. Laws, are by Section 6124, made prima facie evidence of the facts so stated; and among the facts so required to be stated are the time when the parties, or either of them, appeared, and a concise statement of the material parts of the pleadings.

2. An entry in such docket that the plaintiffs filed a complaint in which they claimed that the defendant was indebted to them in the sum of $48 for goods, wares, and merchandise sold by the plaintiffs to the defendant, at the special instance and request of the defendant, is prima facie evidence that the justice's court had jurisdiction of the subject-matter of the action.

3. An entry in such docket, by such justice, that the defendant appeared and waived "the service of summons, and admitted the allegations of the complaint to be true, and consented that judgment be entered against him by confession, in favor of the plaintiff," for the amount claimed by the plaintiff in his complaint, constitutes a sufficient pleading on the part of the defendant, and was prima facie evidence that the said justice had jurisdiction of the person of the defendant.

4. By the express provisions of Section 6050, Comp. Laws, "an action in a justice's court is commenced by issuing the summons, or by the volun-

tary appearance and pleading of the parties." When the defendant appears and pleads, no summons is required to give the court jurisdiction.

5. If the justice's records show affirmatively that the justice's court has jurisdiction of the subject matter of the action, and jurisdiction of the person of the defendant, then the same presumptions are indulged in favor of the regularity and validity of the proceedings of such justice's court as are extended to the superior courts, and they cannot be collaterally impeached for errors or irregularities.

6. The rule that parol evidence is inadmissible to contradict, change, or vary the terms of a written instrument applies only to parties to the instrument, or to those claiming under it, and has no application to creditors who claim adversely to the instrument, and insist that it is void and fraudulent as to them. Such creditors are not precluded from showing, by parol evidence, facts tending to prove that such instrument is fraudulent and void as to them.

7. Section 4389, Comp. Laws, which provides, in relation to personal property included in a chattel mortgage, that, "before the property is so taken, the officer must pay or tender the amount of the mortgage debt and interest," has no application to a chattel mortgage fraudulent and void as to the creditors of the mortgagor. If such instrument is, in fact or law, fraudulent and void as to the creditors of the mortgagor, it is not, in law, a chattel mortgage as to them, which they are bound to pay off before an execution of such creditor can be levied upon the property included in such alleged chattel mortgage.

8. When a judgment creditor places in the hands of the proper officer an execution, and directs him to levy the same upon particular property specified by him, and shall, if so requested by the officer, give him a satisfactory indemnity bond, it is the duty of such officer to levy upon such personal property, though it may be included in a chattel mortgage apparently valid upon its face.

9. An officer who neglects or refuses to levy an execution upon personal property of the execution debtor, which he is specially directed to levy by the execution creditor, and a satisfactory indemnity bond is furnished by such execution creditor if requested by such officer, the responsibility of showing that he could not legally levy upon it devolves upon such officer, and, if he fails in such proof, he is liable for the loss sustained by the execution creditor by reason of his neglect or refusal to make such levy.

10. When the undisputed evidence shows that a chattel mortgage, apparently valid upon its face, was withheld from the records by an express agreement between the mortgagor and mortgagee, for several months, for the avowed purpose of enabling the mortgagor to purchase

more goods, and that, while it was so withheld from the record, a large part of the goods for which the plaintiff recovered the judgment on which an execution was issued, and upon which the sheriff was directed to levy, was purchased of the plaintiff, such mortgage was properly *held* presumptively fraudulent and void as to such creditor, and the trial court properly directed a verdict for the plaintiff, as a matter of law.

(Syllabus by the court. Opinion filed March 3, 1894.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to recover against the defendant as sheriff for damages alleged to have been sustained by reason of the refusal of the defendant to levy an execution. There was judgment for plaintiffs, and defendant appeals. Affirmed.

The facts are stated in the opinion.

*Joe Kirby*, for appellant.

*J. W. Jones*, for respondent.

CORSON, P. J. This was an action against the defendant, as sheriff of Minnehaha county, to recover the amount of a judgment rendered in favor of the plaintiff, and against one A. S. Kilroy, upon which an execution was issued, and placed in the hands of the defendant, as sheriff, and which he refused to levy upon the property of said Kilroy. Judgment for plaintiff, and defendant appeals.

The complaint states, in substance that the defendant was the sheriff of Minnehaha county; that the plaintiff duly recovered a judgment against the said A. S. Kilroy, upon which an execution was issued, and delivered to the defendant for collection; that said Kilroy had and owned personal property in said county sufficient to satisfy said execution; but that defendant neglected and refused to levy upon said personal property of the said Kilroy, or in any manner to obtain satisfaction of said execution, and returned the same unsatisfied. The answer

admitted that the defendant was sheriff as alleged, but denied all the other allegations of the complaint, and set up, as an affirmative defense, the following facts: "(3) That, if said A. S. Kilroy had or owned any personal property in said Minnehaha county at any of said times mentioned in the complaint, the same was covered by mortgage thereon, duly made, executed, and delivered by said Kilroy, as mortgagor, for the full value of said property, which mortgage was duly filed for record at all of said times in the office of the register of deeds of Minnehaha county, and that the plaintiff did not pay or tender to the mortgagee the amount of said mortgage debts and interest, nor did he deposit the amount thereof with the county treasurer, payable to the order of the mortgagee." Upon the trial the plaintiffs proved that a certain book was the official docket of the police justice of the city of Sioux Falls, and then offered in evidence the record of the judgment referred to in the complaint, contained in said docket. This record and judgment were objected to by counsel for defendant, upon the grounds that the same showed upon its face that it was not a judgment of any court; that it purported to be a confession of judgment, and no affidavit was made or filed, as required by law; that no proof of any claim was made; and that no facts showing that the court had jurisdiction were proven. The objections were overruled, and the record admitted in evidence. The judgment and docket entries are as follows: "The plaintiff herein filed his complaint wherein he alleges that the defendant is indebted to him in the sum of forty-eight dollars for goods, wares and merchandise heretofore sold and delivered by the plaintiff to the defendant, at the special request of the defendant; and now, on this 23d day of April, 1892, comes the defendant, A. S. Kilroy, and waives service of summons, and admits the allegations of the complaint to be true, and consents that judgment be entered against him, by confession, in favor of the plaintiff for the sum of forty-eight and ninety-two one-hundredth dollars. Wherefore judgment is hereby rendered

against defendant, A. S. Kilroy, and in favor of the plaintiffs, Jewett Brothers & Jewett, for the sum of forty-eight and ninety-two one-hundredth dollars; costs of this action taxed at six dollars and sixty cents. R. C. Hawkins, Police Justice."

Section 6123, Com. Laws, provides what entries a justice's docket shall contain, and section 6124 provides that "such entries in a justice's docket or in a transcript thereof,    *    *    * are prima facie evidence of the facts so stated." Among the facts so required to be entered are:   "(1) The title. * * * (2) The object of the action or proceeding; and if a sum of money be claimed the amount thereof.   *   *   *   (4) The time when the parties, or either of them, appear.   *   *   *   A concise statement of the material parts of the pleading.   *   *   * The judgment of the court.   *   *   *"   An examination of the record in this case discloses the fact that the police justice fully complied with the statute, and we are of the opinion that the docket entries were sufficient prima facie evidence to show that the court had jurisdiction of the subject-matter of the action, and of the person of the defendant, by his voluntary appearance and pleading to the action, and that the judgment was regular in all respects.

No summons is required to be issued in a justice court in order to give the court jurisdiction, as section 6050 of the Compiled Laws (Justice Court Act) provides that "an action is commenced by issuing the summons, or by the voluntary appearance and pleading by the parties." Therefore when a party appears and pleads, the court acquires jurisdiction of his person. The defendant having appeared and pleaded, by admitting the allegations of the complaint, there would seem to be no necessity for further proof of the plaintiff's demand, and that proof on the part of the plaintiff would be thereby dispensed with. But if proof was required, the justice's court having jurisdiction of the subject-matter, and having acquired jurisdiction of the person of the defendant by his voluntary appearance, this court will presume that the proper proof was

made, in the absence of any showing to the contrary. When acting within the limits of its jurisdiction, the same presumptions will be indulged in support of its judgments as are indulged in to support the judgments of courts of general jurisdiction. Mr. Black, in treating of this question in his work on Judgments, says: ''It is important to be observed, in considering the effect of judgments rendered by inferior courts, that, if the record does affirmatively show the facts necessary to confer jurisdiction, then the same presumptions are indulged in favor of the regularity and validity of its proceedings as are extended to the superior courts, and they cannot be collaterally impeached for errors or irregularities. Once it appears that it had jurisdiction to proceed, and did proceed, the same presumptions prevail in favor of the action and record of the inferior as of the superior court, and the verity of its record, and the presumptions which support it, are alike indisputable in any collateral way." 1 Black, Judg. § 287. The expression in the justice's docket that the defendant consents that judgment be entered against him "by confession" is surplusage, and should be disregarded. The term ''by confession'' was evidently inadvertently used, and means simply, as there used, ''by consent,'' or by the admission of the allegations of the complaint by the defendant, repeating, in other words, what had already been said. There are no elements of a confession of judgment in the case, and the justice evidently had no thought of a confession of judgment as used in the statute, in his mind at the time he made the entry. We are of the opinion that the objections to the justice's docket entries were properly overruled, and that the judgment was properly admitted in evidence.

The plaintiff proved that the defendant had in his hands personal property of Kilroy, of the value of about $300, and that defendant had neglected and refused to collect the said execution out of the same, and rested. The defendant then introduced in evidence the chattel mortgage from said Kilroy to F.

S. Gould, bearing date October 29, 1891, and purporting to have been filed in the office of the register of deeds April 14, 1892, and by which said Kilroy mortgaged to said Gould "all the following described personal property, to-wit, merchandise and groceries; * * * it being the intention that the addition of stock will cover the amount sold, and keep the value of the stock up to the present value." The defendant then testified that he held the stock of goods under said mortgage, and was foreclosing the same when the execution was delivered to him, and that he sold said goods under the mortgage for less than the amount due upon the same. The plaintiff, in rebuttal, called the said A. S. Kilroy as a witness, who testified as follows: "I am the person mentioned in defendant's exhibit, (chattel mortgage.)" "A. I remained in possession of this stock of goods from the 29th of October up to the 22d day of April, when the sheriff took possession of it. Q. What quantity of goods, that were in the store at the time the mortgage was made, remained there at the time the sheriff took possession in April? A. I think there was about thirty-five dollars' worth. The remainder of the goods were purchased since. I bought the goods of Jewetts that entered into this judgment between the 10th day of November and the time the sheriff took possession; mostly before this mortgage was filed, some after. Q. What did you do from that time on with reference to the stock of goods? A. I carried on a general grocery business, and sold the groceries out, and bought others in their place. This was from the 1st of November, 1891, up to the 22d day of April, 1892. Mr. Gould was here. He was here about the holidays. He went away, and was gone until the latter part of March. Q. Was anything said between you and Mr. Gould, about the time the chattel mortgage was made, with reference to what you intended to do with the goods? A. The conversation was: "I should sell the goods, and buy more, and that he would not record the mortgage. I told him that I did not want the mortgage recorded, as the mortgage was against the goods. I sim-.

ply gave it to him as security. He was satisfied as to that he would not record it. He would not make any trouble in regard to the mortgage, because he said, if he recorded it, the mortgage would hinder my buying any more goods. He did not wish to do that." The questions were all objected to by counsel for defendant and appellant, upon the ground that the same were incompetent, irrevelent, and called for evidence tending to contradict and vary the terms of the chattel mortgage. The counsel presses his objections in this court, and contends that under the decision in Dean v. Bank, 6 Dak. 222, 50 N. W. 831, the evidence was inadmissible. But we are of the opinion that there is a marked distinction between that case and the one at bar. In that case the court reversed the decision, for the reason "that the court allowed evidence to be given as to what statements and negotiations of the parties to the chattel mortgage were at the time of its execution, and which materially altered and varied the terms of the instrument." In that case the defendant bank claimed the goods under the chattel mortgage, and as included in the mortgage. The plaintiff, by the evidence complained of, sought to show that, by agreement of the parties, the goods claimed by him, though apparently included in the mortgage, by the terms of the same, were not in fact so included. This was clearly an attempt to contradict and vary the terms of the mortgage by parol evidence, by one claiming under the mortgagors.

But in the case at bar the evidence introduced has no tendency to vary or contradict the terms of the mortgage. It will be observed that the mortgage, by its terms contemplates the sale of the goods, and it in terms provides that the mortgagor shall remain in possession. The facts proven, therefore, in no manner tended to contradict or vary the terms of the mortgage but were facts existing entirely outside the mortgage agreement. But the rule invoked applies only to parties to the instrument, or parties claiming under or through the instrument, and has no application to parties situated as the plaintiffs are,

who claim adversely to the instrument.     Such parties are not precluded from showing the real facts, whether they contradict the terms of the instrument or not.     This distinction is well stated by the court of appeals of New York, in Potts v. Hart, 99 N. Y. 168, 1 N. E. 605.     In that case the court says: "A mortgage thus given is fraudulent and void as to creditors, because it must be presumed that at least one of the purposes, if not the main purpose, for giving it, was to cover up the mortgagor's property, and thus hinder and delay his other creditors.     It matters not whether the agreement that the mortgagor may continue to deal in the property for his own benefit is contained in the mortgage, or exists in parol outside of it; and, where the agreement exists in parol, it matters not whether it is valid, so that it can be enforced between the parties, or not; for, whether valid, or invalid, it is equally to show the fraudulent purpose for which the mortgage was given, and the fraudulent intent which characterizes it.     It is always open to creditors to assail, by parol evidence, a mortgage or a bill of sale of property as void and fraudulent as to them.     While, between the parties, the written contract may be valid, and the outside parol agreement may not be shown or enforced, yet it may be shown by creditors, for the purpose of proving the fraudulent intent which accompanied and characterized the giving of the written instrument.     It is usually difficult to prove by parol an agreemnt in terms that the mortgagor may continue to deal in the property for his own benefit.     Parties concocting a fraudulent mortgage would not be apt to put the transaction in that unequivocal form.     But all the facts and circumstances surrounding the giving of the mortgage, and the subsequent dealing in the property with the knowledge and assent of the mortgagee may be shown, and they may be sufficient to justify the court or jury in inferring the agreement; and so the parol agreement was inferred in all the cases which have come under our observation.     So, too, such a mortgage would be fraudulent and void as to creditors

if it was the arrangement between the mortgagor and mortgagee that the former might continue to deal in the mortgaged property for his own benefit so long as the latter consented thereto; thus leaving it in his power to assent that the property should thus be sold, and thereby deprive the mortgage of its character as a security. The parties to a mortgage cannot thus play fast and loose with the mortgaged property, and thus hinder and delay creditors." In the case of Paper Co. v. Guenther, 67 Wis. 101, 30 N. W. 298, evidence of a similar character seems to have been admitted without objection on the part of counsel, and was assumed to have been correctly admitted by the court. We are of the opinion that the evidence of Kilroy was properly admitted, and that the objections of the counsel were properly overruled.

It is further contended by counsel for appellant that the sheriff was not required by law to levy upon the property included in the mortgage, for the reason that the plaintiff failed to pay or tender the amount due upon the mortgage, as provided by Section 4389, Comp. Laws. That section reads as follows: "Before the property is so taken, the officer must pay or tender to the mortgagee the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee." But we are of the opinion that that section has no application to a mortgage which the creditor claims to be fraudulent and void as against the creditors of a mortgagor. The object of that section evidently is to prevent an officer from attaching and levying upon personal property included in a valid chattel mortgage before the amount due upon such a mortgage is paid or tendered as therein provided. But it has no application to a void or fraudulent instrument denominated a "chattel mortgage." Such an instrument, fraudulent and void as to the creditors of the mortgagor, is not in law a "mortgage" as to them, though it may be so called. To require a creditor, before he can contest a mortgage so claimed to be fraudulent and

void as to the creditors of the mortgagor, to pay the amount due upon the mortgage, or deposit that amount with the county treasurer, would be imposing a duty upon the creditor so attacking the mortgage not intended to be imposed by the statute. We think the proper construction of the statute is that when an attaching or judgment creditor claims that a mortgage is fraudulent and void as to him, and is willing to assume the risk of attacking such mortgage. he may have the property attached or levied on, and, in that proceeding, test the validity of such mortgage. Hence it becomes the duty of the officer, when a writ of attachment or an execution is placed in his hands, and he is directed to attach or levy upon the property included in such mortgage, (and such attaching or judgment creditor shall, if the officer require him to do so, give to such officer a satisfactory indemnifying bond) to attach it or levy upon it. The duty of the officer in such case is thus stated by Mechem, in his work on Public Officers: "When a sheriff takes a writ, says Chief Justice PARKER, with directions to serve it in a particular manner, without requiring a written indemnity, he is bound to serve it, if he may, according to the instructions; and it is not a sufficient excuse for him that he subsequently obtained some information which led him to suppose that a service in the manner directed would be ineffectual for the interests of the plaintiff, and even expose himself to an action, if his supposition was erroneous, and a service in the manner would, in fact, have been legal and effectual. He may require an indemnity, with a surety, if that be important for his security. If he make no such request, but undertakes to serve the process, it is not sufficient for him to say that he had some information which led him to believe that it was unsafe to serve it. To admit such an excuse would be dangerous, and the authorities are the other way." "An officer who receives a writ for service, with instructions as to the time or manner of its execution, or as to the property or persons to be subjected to it, is bound to observe the instructions, if he lawfully can, and

is liable for a loss resulting from his neglect to do so." Mechem, Pub. Off., §§ 749, ₁51; Marshal v. Hosmer, 4 Mass. 63; Bond v. Ward, 7 Mass. 123.

In this case it clearly appears that the defendant was required to levy upon the stock of goods of the debtor Kilroy, in the hands of the officer, which the defendant claimed was included in the chattel mortgage. The defendant testified as follows: "I am and have been sheriff of this county for several years past. Exhibit C (the execution) was given to me to execute. I did not collect any part of it. I did not make a levy, because I did not find anything to levy upon. You directed me to levy upon a stock of goods owned by Mr. Kilroy, but it was covered by mortgage. I had the stock in my possession at the time, foreclosing the mortgage as sheriff." It does not appear from the defendant's evidence that he demanded any indemnity bond, and we may conclude that none was demanded. The sheriff, therefore, in refusing to levy upon the goods in accordance with the direction of the plaintiff, assumed the responsibility of showing that the mortgage was valid in all respects as a lien upon the property, as against the creditors of the mortgagor, and that he could not have lawfully levied upon the same before the amount due on the mortgage was paid or tendered. The sheriff sought to do this by introducing the chattel mortgage from Kilroy to Gould, set forth in the answer. The counsel for respondent contends that this mortgage was fraudulent and void upon its face as to the creditors of Kilroy, the mortgagor. This mortgage was before us in the case of Ayers, Weatherwax & Reed Co. v. Sundback, 58 N. W. 4, and we held it valid upon its face, and *prima facie* good as against the creditors of the mortgagor. That decision must control this case as to the validity of the mortgage, independent af any extrinsic evidence.

The only question remaining is, did the trial court err in directing a verdict for the plaintiff, or, in other words, was the evidence as to the mortgage being fraudulent and void as to the

creditors of the mortgagor so conclusive that the court could say as matter of law that the same was fraudulent and void as to such creditors? A careful consideration of the evidence leads us to the conclusion that the trial court committed no error in holding the mortgage fraudulent and void as to the creditors of the mortgagor, as a matter of law, and that it, therefore, properly directed a verdict for the plaintiff. It clearly appears from the undisputed evidence of Kilroy that the mortgage was withheld from the record by an express agreement between himself and the mortgagee, from October 27th to April 14th, for the avowed purpose of enabling the said mortgagor to purchase more goods; and that, while it was so withheld from the record, a large part of the goods for which the plaintiff recovered judgment was purchased from the plaintiff by Kilroy. The facts bring the case clearly within the provisions of Section 4379, Comp. Laws, which provides as follows: "A mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The mortgage being absolutely void as to a part of the goods for which the judgment was recovered, it was void as against the plaintiff as a matter of law. That being so, and the facts being undisputed, the direction of the court was proper. The case at bar is quite analogous to the case of Paper. Co. v. Guenther, 67 Wis. 101, 30 N. W. 298, heretofore referred to. In that case the trial court found that the mortgage was not filed until November 12, 1884, though it was executed in March, 1884, and that the mortgagee neglected to file said mortgage at the solicitation of the mortgagor, so as not to interfere with the business of the mortgagor. It further found that, during the time said mortgage was withheld from the record, the plaintiff sold and delivered to the mortgagor goods,

124  Jewett *et al. v.* Sundback, Sheriff.

Opinion of the Court—Corson, P. J.    [5 S. D.

for which the plaintiff recovered judgment against the mortgagor. The trial court found, as a conclusion of law, that said chattel mortgage so made, executed and delivered and filed as aforesaid, was and is void as to the plaintiff, whose debt was contracted in the interim between the making and filing said chattel mortgage. The decision of the trial court was affirmed, and in the opinion, the supreme court says: "We do not think the concession made by the attorneys for the plaintiff on the trial, 'that the garnishee, Guenther, had no actual intent to defraud any creditor of the Freie Presse Company by withholding his mortgage from record,' relieves him from the natural and legal consequences of such act. Under the facts found by the court, the withholding the same from record would operate as a fraud upon the plaintiffs, who had given a credit upon the supposition that the property of said Freie Presse Company was not incumbered if he were now permitted, as against them, to insist upon his mortgage as an incumbrance upon such property." As bearing upon this question, see Thompson v. Van Vechten, 27 N. Y. 568; Feary v. Cummings, 41 Mich. 383, 1 N. W. 946; Crippen v. Fletcher, 56 Mich. 386, 23 N. W. 56; Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Robinson v. Elliott, 22 Wall. 513. The case at bar is distinguishable from the case of Ayers, Weatherwax & Reed Co. v. Sundback, above referred to, in the fact that in the latter case there was no evidence tending to prove that the officer was directed to levy upon the property indicated in the mortgage, and without such special direction the officer was not required to levy upon the mortgaged property. A specific direction to the officer to levy upon the particular property is necessary, in order that he may have an opportunity to require an indemnifying bond, if he deems it proper to do so. Merely delivering the execution to the officer, without any special direction, did not impose upon such officer the duty of levying upon property included in a chattel mortgage. It was only by requiring the officer to levy upon the particular property included in the chattel mortgage, and his

failure to so comply with the directions, without an indemnifying bond, if he failed to demand one, that the officer would be liable. Finding no error in the record, the judgment of the circuit court is affirmed.