SMITH, Superintendent, Respondent, v. SHIELDS, Appellant.

(240 N. W. 498.)

(File No. 6631. Opinion filed January 30, 1932.)

For former opinion see 56 S. D. 599, 230 N. W. 26.

*Irvin H. Myers,* of Watertown, for Appellant.

*Perry F. Loucks* and *Matthew J. Schmidt,* both of Watertown, (*T. B. Thorson,* of Rapid City, of counsel), for Respondent.

MISER, C. For the former opinion in this case see 56 S. D. 599, 230 N. W. 26. On May 21, 1919, appellant Shields agreed in writing, Exhibit 5, with one Rice to convey to him a residence lot owned by her upon payment of $1,850 in monthly installments of $15, and accrued interest. Later Rice assigned his interest in the contract for deed, Exhibit 5, to Frank C. Tenney, who assumed

Rice's obligation thereunder. On January 27, 1920, Tenney, as first party, entered into a written agreement with A. F. Hilts to assign to Hilts his interest in the premises. This agreement, Exhibit 7, recites that, "in consideration of the sum of $400.00 cash, and a promissory note for $855.00.made payable six months after date," Tenney "agrees to assign to" Hilts "all right and title to" the premises, "subject to the following conditions": Hilts "agrees to keep up all payments each month on contract for deed, which said contract party of the first part now holds of aforesaid property and which contract calls for the payment of a balance of $1,745.00, payable in monthly installments of $15.00 and interest on the principal sum. Payments to be made on the first day of each month beginning February 1, 1920, to F. E. Tenney, agent for" Frank C. Tenney. A. F. Hilts "agrees to assume all obligations of" Frank C. Tenney "in said contract." "Upon payment of the aforesaid principal note of $855.00," Tenney "agrees to assign to" Hilts "all his right and title to the contract for deed to the aforesaid property."

Hilts paid the $400 in cash, executed a note for $855, took possesson of the property and kept up the payments on the contract for deed until on April 6, 1926, when he paid to Mrs. Shields $692.02, the balance on that contract, which balance was obtained by mortgaging the premises; and at his request Mrs. Shields executed a deed to his wife.

According to the allegations of the complaint of respondent Smith, Tenney indorsed the $855 note to the Dempster State Bank whereby, it is claimed, the bank became the owner of all the interest of Tenney in the contract for deed. This assignment was confirmed by a formal. assignment, Exhibit 8, dated June 17, 1925, from Tenney to Smith, as superintendent of banks, who took charge of the Dempster State Bank on December 10, 1923. Plaintiff contends that when Mrs. Shields transferred the title to Mrs. Hilts, instead of to Smith for the bank, she prevented the bank from collecting a note for $1,038 given by Hilts in 1923 to the bank, and which is claimed by plaintiff to be a renewal of the $855 note given by Hilts to Tenney.

The answer of appellant Shields alleges that on January 27, 1920, Tenney assigned to Hilts all Tenney's interest in "the contract for deed and in the real property therein described for $2,000.00 .

as the value of said real property, which was paid in the following manner: $400.00 paid to Tenney in cash at the time of the making of said assignment, and the balance of said consideration by assuming the payment of the installments when due on said contract; that whatever note or notes were given by said Hilts to said Tenney in said transaction were given to represent said balance due on said contract or a part thereof. That pursuant to and by virtue of said assignment of said contract to said Hilts, the latter immediately was given possession of said real property * * * and did actually enter the possession thereof. * * * That neither the Dempster State Bank nor plaintiff have made any payments * * * but instead that the said A. F. Hilts from the time he became assignee and owner of said contract has made payment of all installments, interest and taxes under said contract as they became due." On the foregoing allegations, and upon the claim that she had no notice of any assignment by Tenney to the bank, appellant Shields asked for judgment.

Tenney, who, according to the allegations of respondent's complaint, was the payee of the $855 note, and by whose indorsement thereof the agreement is claimed to have been first assigned, is not a party to this suit. Neither is Hilts, who signed the $855 note, and the notes given either in renewal or in settlement thereof; neither is Mrs. Hilts, grantee in the deed made by Mrs. Shields. Mrs. Shields is sued for damages because through her delivery of deed to Mrs. Hilts appellant claims he lost his chance to compel Hilts to pay his note.

When appellant attempted to show by oral testimony of Hilts that the $855 note evidenced part of the $1,745 balance to be paid to Mrs. Shields, respondent objected on the ground that it was an attempt to vary the terms of the agreement of January 27, 1920, Exhibit 7, signed by Hilts and Tenney, and the promissory note dated June 15, 1923, for $1,038, Exhibit 10, signed by Hilts, and that respondent had no notice from the pleadings of any such intention to attack those writings.

In respondent plaintiff's case in chief, F. E. Tenney testified that he negotiated the sale between Frank C. Tenney and Hilts, evidenced by the above-quoted Exhibit 7; that the consideration for the sale was around $3,000; that he took the note for $855 made by Hilts; that Frank collected the $400 cash; that Hilts assumed

the balance of the payments to Mrs. Shields; that the items that made up the purchase price were the balance payable to Mrs. Shields on the contract, plus the $855 note, plus the $400 in cash; that he collected the monthly installments that went to Mrs. Shields from Hilts and paid it over to the Citizens' National Bank, at Frank C. Tenney's request, for Mrs. Shields. He denied on cross-examination that he told Mr. Hilts that the price of the property was $2,000.

Appellant, in proving her defense, sought to show, likewise by parol, that the consideration agreed upon between F. E. Tenney, agent for Frank C. Tenney, and Hilts was not $3,000, but $2,000; that the items making it up were not the balance payable to Mrs. Shields, plus the $855 represented by the note, plus the $400 cash, but were instead the balance payable to Mrs. Shields, of which the $855 note represented a part, and the sum of $400 cash. Appellant was not permitted to do so, and assigns the exclusion of this parol evidence as error.

 In support of her claimed right to prove by parol what she contends was the actual agreement between Tenney and Hilts at the time of the execution of Exhibit 7, appellant does not question the correctness of the parol evidence rule as stated in Farmers' Elevator Co. v. Swier, 50 S. D. 436, 210 N. W. 671.

She does contend, however, that the parol evidence rule may not be invoked against her; she being neither a party nor a privy to the agreement, Exhibit 7, nor to the note, Exhibit 10. Jewett v. Sundback, 5 S. D. 111, 58 N. W. 20. The rule for which appellant contends is stated thus in Jones Com. Ev. (2d Ed.) p. 2708, § 1488: "The parol evidence rule is limited to the parties to the contract or writing and their privies. Therefore, where the controversy is between a party to a written contract and one who is neither a party nor a privy to it, the rule which the courts usually refer to as 'excluding parol evidence tending to vary, modify or contradict the writing' does not apply." See Chamberlayne Evidence, § 3550; Clapp v. Huron County Banking Co., 50 Ohio St. 528, 35 N. E. 308; 8 Ann. Cas. 348, 349; 22 C. J. 1292; 10 R. C. L. 1020.

The reason that strangers are not limited by the parol evidence rule is stated in 1 Greenl. Ev., § 279, thus: "It cannot affect third persons, who, if it were otherwise, might be prejudiced by things

recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statement of others."

Mrs. Shields was not a party to Exhibit 7 or to Exhibit 10. So far as appears from the record, she never saw either of them. The only contract to which Mrs. Shields was a party was Exhibit 5, the contract for deed. She at all times was one of the parties to that contract, and, on one side of it, as vendor. On the other side of that contract were; successively, Rice. Tenney, and either Hilts or Smith, or both. But Mrs. Shields was not a party to, or on either side of, the agreement, Exhibit 7. Was she a privy to it or a stranger? The term "privity" denotes mutual or successive relationship to the same right of property. 6 Words and Phrases, First Series, 5606; 3 Words and Phrases, Second Series, 1217; 6 Words and Phrases, Third Series, 144. No other definition seems to have been so generally approved by courts. See, also, Greenleaf Ev. § 189; 50 C. J. 404; Jones Com. Ev. (2d Ed.) § 1812, p. 3358. Discussing the question of privity as relating to judgments, the text last cited, on page 3361, quotes Freeman Judgments, § 162, thus: "It is essential to privity, as the term is here used, that one person should have succeeded to an estate or interest formerly held by another. He who has succeeded is in privity with him from whom he succeeded, * * *. On the other hand, except to the extent which one person has succeeded to an estate or interest formerly held by another, there can be no privity between them, no matter what were or are their relations to each other or to the same piece of property."

In Kammann v. Barton, 23 S. D. 442, 122 N. W. 416, this court said that a grantee of real estate under some circumstances stands in privity to his grantor, but the grantor does not stand in privity to the grantee.

Here, under Exhibit 5, the contract for deed, if Hilts had any interest in the property, that interest had no identity with the interest of Mrs. Shields. Rather were their interests adverse. To say that Mrs. Shields is a privy to the agreement, Exhibit 7, between Tenney and Hilts is to assume that Mrs. Shields acquired or succeeded to the rights of property which Hilts had acquired under Exhibit 7. But Mrs. Shields never acquired that right, nor

could she enforce, against Tenney, the obligations created by Exhibit 7. This is the essence of the reason given by Jones Com. Ev. (2d Ed.) p. 2708, § 1488, why a stranger is not bound by the writing: "Strangers have not assented to the compact, nor can they be heard in a proceeding to set aside or reform it. Hence they are at liberty to show that the written instrument does not disclose the true character of the transaction."

But though Mrs. Shields be not a privy to the contract, Exhibit 7, respondent contends that she is estopped because she claims under it, citing Haag v. Burns, 22 S. D. 51, 115 N. W. 104. In Jones Com. Ev. (2d Ed.) p. 2710, § 1488, the rule for which respondent contends is stated thus: "Where one, although not a party to the instrument, bases his claim upon it, and seeks to render it effective in his favor as against the other party to the action, by enforcing a right originating in the relation established by it, or which is founded upon it, the parol evidence rule applies."

The facts in Haag v. Burns, supra, come squarely within that rule. But the facts in the case at bar are very different. Here Mrs. Shields is not attempting to enforce the agreement, Exhibit 7. Her rights did not originate in that agreement. She did not introduce it in evidence. Neither is she an assignee of it, nor a beneficiary in it.

We are assuming for the purpose of this opinion that Exhibit 7 was clear, complete, and unambiguous so as to come within the protection of the parol evidence rule as between parties or privies to it. We conclude, however, that Mrs. Shields was neither a party nor privy to the agreement nor claiming under it so as to bring her within the parol evidence rule.

The judgment and order appealed from must therefore be, and they are, reversed.

POLLEY, ROBERTS, WARREN, and RUDOLPH, JJ., concur.

CAMPBELL, P. J., concurs in result.