JOHN F. KOLTERMANN, APPELLEE, V. WILLIAM B. CHILVERS ET AL., APPELLANTS.

FILED FEBRUARY 12, 1915.   No. 18,001.

Ejectment: APPEAL: CONFLICTING EVIDENCE. In an ejectment suit, where the evidence is conflicting as to adverse possession, the general rule applies that the verdict of the jury will not be set aside unless it appears to be clearly wrong.

APPEAL from the district court for Pierce county: ANSON A. WELCH, JUDGE. *Affirmed.*

*H. C. Brome* and *M. H. Leamy,* for appellants.

*Fred H. Free* and *H. F. Barnhart, contra.*

BARNES, J.

This was an action in ejectment tried in the district court for Pierce county. The plaintiff alleged in his petition that he was the owner of the southwest quarter of the northwest quarter of section 10, and the south one-half of the northeast quarter of section 9, all in township 26 north, of range 2 west of the sixth P. M., situated in Pierce county. This description, according to the government survey, embraced the land in question, which contains 13.246 acres, and plaintiff alleged that ever since the 25th day of October, 1901, the defendants had kept him out of possession thereof. The answer was a general denial. On the issue thus joined, there was a jury trial and a verdict was returned for the plaintiff. Judgment was rendered on the verdict, and the defendants have appealed.

The questions presented in this case are: (1) The true location of the boundary line between the plaintiff's land described in his petition and the land owned by defendants, which lies immediately south of and adjoining plaintiff's premises. (2) The statute of limitations.

Defendants contend that the verdict of the jury is not sustained by the evidence. The bill of exceptions discloses

97Neb.43

that the parties are all old residents of Pierce county. The plaintiff's evidence showed that the person from whom he obtained his title homesteaded the land and obtained title thereto from the United States; that the land was conveyed by plaintiff by a warranty deed. Therefore, there was no question as to plaintiff's title. On the other hand, defendants showed a perfect title to their land adjoining plaintiff's premises on the south. It appears that the land was farmed on both sides of the boundary line, and in 1901 the defendants built a fence between their premise and the plaintiff's land, which they testified was placed on the turn-row between the fields as they had been theretofore cultivated. The plaintiff insisted that the fence was not on the true boundary line, but was placed so far north of the true line as to include 13.246 acres of his land. The evidence was conflicting, but to our minds the testimony of W. H. Lowe, a competent surveyor who resurveyed the land belonging to the litigants, was sufficient to sustain the verdict. Mr. Lowe described the manner in which he ascertained the ancient government corners and how he reestablished and marked them. He subdivided the sections in question, and testified positively that the defendants' fence was about seven rods north of the true boundary line. Other witnesses who had seen the ancient corners, and claimed to know the boundary line, corroborated the evidence of the surveyor. The witnesses did not all agree upon this question, but we must decline to set aside a verdict rendered on conflicting evidence.

As to the statute of limitations, it appears that defendants' fence, inclosing the land in controversy, was built in 1901. This action was commenced in 1904. At that time the statute authorized two trials in an ejectment suit. This accounts for the length of time the action was pending before final judgment was rendered. The defendants contended that they had exclusive adverse possession of the land, from the time of purchasing it in 1893, as far north as the fence was placed. In this they were supported by several witnesses. The plaintiff contended that the fence was placed farther north so as to include the strip of land

of which defendants had not had exclusive adverse possession before the fence was built, and that each party had in fact had control of the land up to the true line. Upon this fact there was a substantial conflict, and we cannot say that the verdict is so clearly wrong as to require a reversal.

It follows that the judgment of the district court was right, and is

AFFIRMED.

MORRISSEY, C. J., ROSE and HAMER, JJ., not sitting.