INTERNATIONAL HARVESTER COMPANY OF AMERICA, a Corporation, Respondent, v. OSBORNE-McMILLAN ELEVATOR COMPANY, a Corporation, Appellant.

(199 N. W. 865.)

**Landlord and tenant — one converting any portion of crop under lease providing for possession in lessor until lease conditions complied with, liable to lessor.**

Where a lease of a farm on shares contains a provision to the effect that title to and possession of all crops shall be in the lessor until the conditions of the lease have been complied with by the lessee and a division made of the crop, the interest of the lessor prior to a division is co-extensive with the entire mass of crop produced and one who converts any portion of such common mass prior to such division is liable in an action by the lessor for the conversion of such grain for the damage sustained by reason of such conversion.

Opinion filed June 4, 1924.   Rehearing denied July 29, 1924.

Landlord and Tenant, 36 C. J. § 1940 p. 700 n. 47 New; § 1957 p. 712 n. 65 New.

From a judgment of the District Court of Ward County, *Moellring,* J., defendant appeals.

Affirmed.

*F. B. Lambert,* for appellant.

*B. H. Bradford,* for respondent.

CHRISTIANSON, J. This is an action for the conversion of certain wheat upon which the plaintiff claims a lien by virtue of a chattel mortgage. The case was tried to a jury; but at the close of all the testimony both parties made motions for a directed verdict; and, thereupon, the court, by consent of the parties, discharged the jury, took the case under advisement and gave both parties an opportunity to submit briefs upon the questions involved. After due consideration the trial court made findings of fact and conclusions of law in favor of the plaintiff and directed judgment to be entered in its favor. Judgment was entered accordingly and the defendant has appealed from the judgment.

The plaintiff held a chattel mortgage executed by one L. S. Johnson, upon an engine, separator and mower and all crops grown in 1921 on the SE¼ of section 28, township 152, range 92 in Mountrail county. This mortgage secured the payment of the sum of $666.45, and was dated January 5th, 1921, and filed in the office of the register of deeds of Mountrail county on January 7th, 1921. The mortgagor, Johnson, did not farm the land personally, but on March 8th, 1921, he entered into what is commonly denominated a farm lease or cropper's contract with one, Van Buskirk, under the terms of which said Van Buskirk agreed to farm the premises during the farming season of the year 1921. The contract provided that each of said parties should receive one-half of the crops produced. It further provided that until final settlement was made under the contract, "the title and possession of all . . . grain, crops . . . raised, grown or produced on said premises shall be and remain in the party of the second part (Johnson) and said party of the second part has the right to take and hold enough of the crop . . . and products that would, on the division of the same, belong to the said party of the first part (Van Buskirk) to repay any and all advances made to him by party of the second part (Johnson) and interest thereon. . . ." The evidence shows that (according to

machine measure) over nine hundred bushels of wheat were raised on the land during the season of 1921 and that some of this wheat was delivered to the defendant at its elevator at Sanish.

The first contention advanced by the defendant is that the evidence does not show that its mortgagor, Johnson, owned the crops upon which the mortgage was given. This issue was raised in defendants' motion for a directed verdict. In our opinion the contention is devoid of merit. Van Buskirk, the man who farmed the premises and raised the grain in question here, was sworn and testified upon the trial. His testimony was to the effect that he entered into possession of the premises by virtue of the written contract between himself and Johnson, and that the grain was produced by him while occupying the land under such contract. This contract recites that Johnson is the owner of the land. It is undisputed that Van Buskirk entered into possession of the land by virtue of the right given in such contract, and there is no contention that any one disputed his right to occupy and till the premises. Nor is there even a scintilla of evidence to the effect that any person other than Johnson was the owner of or entitled to the possession of the premises. Hence, we have a situation where it is shown that Johnson was exercising dominion over the premises; that claiming to be the owner and entitled to such possession he made a contract with Van Buskirk; that Van Buskirk entered into possession and produced the crop; that such crop was harvested, threshed and marketed by him. It is, we think, too clear for controversy that under these facts the trial court was fully warranted in finding as against the defendant, who received the grain from Van Buskirk, that Johnson was the owner of such wheat in accordance with the terms of the contract under which Van Buskirk had produced it.

It is, also, contended that the contract had terminated before the crops in controversy were grown and that hence its provisions do not control. This contention is based upon what is manifestly a clerical error in the contract. The contract reads: "The party of the first part hereby agrees to and with the party of the second part, . . . to well and faithfully till and farm, during the season of farming, in the year 1921, commencing 8th day of March 1921, and ending 30th day of March, 1921, in a good and husbandlike manner, . . . the following described premises etc."

51 N. D.—24.

The contract contains provisions relating to the furnishing of seed, the planting of crops, the payment of threshing-machine bill, and the delivery of the grain, etc. There is also a provision whereby Van Buskirk agrees to take care of certain personal property of Johnson until "the last of July, at which time (Johnson) is going to have a sale leaving enough property for *doing the harvest.*" The contract was for the farming season of 1921. The object of the contract was the planting, raising, harvesting and threshing of a crop during the farming season of that year. It is a matter of common knowledge that such farming season would be for a much longer period than from March 8th until March 30th of the same year. If the term of the lease or contract was only for 22 days then manifestly every other provision in the contract would be nugatory. In other words, a restriction of the term to a period of 22 days would defeat the very purpose for which the contract was made; and such restriction is wholly inconsistent with the provision that the contract was to cover the farming season of 1921. All the other provisions and stipulations in the contract are in accord with the provisions that the contract was to cover the farming season of 1921. Of course, the contract should be construed so as to carry out the manifest intention of the parties. That intention can only be carried out by recognizing that a clerical error was committed in the words "30th day of March 1921;" and upon the trial Van Buskirk testified that in the insertion of such date a clerical error was made.

The next contention advanced by the appellant is that the evidence is insufficient to establish the identity of the grain. This contention is, we think, likewise without merit. The undisputed evidence shows that Van Buskirk in the year 1921 raised no crop other than that which he raised on the land covered by the mortgage in this case and that all of such grain was hauled to Sanish. The names of the persons hauling the grain were given by Van Buskirk in his testimony and some of the men who hauled the grain also testified. Some of the witnesses testified positively that they hauled wheat and delivered it at defendants' elevator. The auditor of the defendant elevator company produced the records of the defendant elevator company's elevator at Sanish and identified the number of loads of Van Buskirk's wheat which had been hauled and delivered. These records showed not only the name of the

person on behalf of whom the grain was delivered but also the name of. the persons who hauled the same.

It is next contended that the mortgagor, Johnson, authorized one Erickson to look after his interest incident to the threshing and division of the grain; that the grain was divided by said Erickson as the agent of Johnson and that the defendant purchased that part of the grain which belonged to Van Buskirk upon such division; that in any event defendant merely purchased that part of the grain which would properly belong to Van Buskirk upon a division being made and that consequently Johnson, and plaintiff who claims under him, have sustained no injury. These contentions cannot· be sustained. Erickson was the cashier of a bank in Sanish. Such bank held a mortgage executed by Johnson upon the same grain which is covered by plaintiff's mortgage. The lien of such bank's mortgage, however, was subsequent to the lien of plaintiff's mortgage. While there is some claim on the part of Erickson that Johnson authorized him (Erickson) to look after his interests and that by virtue of such authority he (Erickson) made division of the grain, we are agreed that the trial court was entirely justified in concluding that the claimed authority on the part of Erickson had not been established, and that no division of the grain was ever made. In other words, in our opinion, the trial court was fully justified in finding, as it did, that "the said Van Buskirk  .  .  .  did in the fall of 1921, and on or about September first thereof, deliver to the defendant elevator company at Sanish, North Dakota, 464 bushels and 20 lbs. net of wheat grown on the said premises, and to the Farmers Elevator & Trading Company of Sanish, North Dakota, 231 bushels and 30 lbs. net of wheat raised upon the said premises under said lease. That no division of the said grain was ever made, but that thereafter one Erickson claimed a right to the said crops as an officer of the Farmers State Bank of Sanish, North Dakota, under a chattel mortgage covering said crops and given by the said L. S. Johnson, caused and procured the said crops to be sold and paid to the said Van Buskirk at least one-half of the value thereof."

While the evidence was to the effect that according to the threshing machine measure something over nine hundred bushels of wheat was threshed, it appears that the wheat was of such grade that when weighed at the elevators it was found there was considerably less grain

than the threshing machine measure indicated. The evidence showed, and the trial court found, that 464 bushels and 20 lbs. of the wheat in question were delivered at the defendants' elevator and 231 bushels and 30 lbs. of such wheat were delivered to the Farmers Elevator and Trading Company. The trial court accepted these amounts as evidence not only of the grain delivered at such elevators but also as evidence of the grain produced by Van Buskirk under the contract with Johnson. In other words, the trial court found, in effect, that the only grain grown upon the premises described in plaintiffs' mortgage during the year 1921 was the grain so delivered at the elevators; and that Johnson's share was one half of the amount so established, and that consequently plaintiffs' mortgage attached only to Johnson's share as so established, or to 347 bushels and 30 lbs. or stated otherwise, the trial court in finding the quantity of grain to which plaintiffs' mortgage attached disregarded the evidence as to the threshing machine measure and accepted as controlling the amount which the weights at the elevators showed had actually been delivered at such elevators and found the amount so delivered to be the entire amount of wheat actually produced on the premises in question during the year. Manifestly, if there was any error in this deduction it was error against the plaintiff rather than error against the defendant.

According to the findings of the trial court,—and these findings, in our opinion, have ample support in the evidence,—Van Buskirk raised 694 bushels and 50 lbs. of wheat under his contract with Johnson. When the wheat was threshed, 464 bushels and 20 lbs. were delivered to the defendant, and the remaining 231 bushels and 30 lbs. were delivered to the Farmers Elevator and Trading Company. The contract under which this wheat was produced, contained a stipulation reserving title to all of the grain in Johnson until final settlement and division thereof between Johnson and Van Buskirk.

In construing the effect of a similar stipulation this court, in Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263, 266, said: "Where the owner of land, in parting with the use of it to another, stipulates that the legal title, control, and possession of all crops shall be in him for certain purposes, that stipulation is entitled to be enforced, so as to carry out the intention and purposes for which it was made. But it will not be construed

so as to enable the owner to violate the rights of the tenant, nor will it be construed so as to violate the rights of the owner of the land. On the one hand, the legal title reserved in the landlord will be recognized and enforced in accordance with, and to carry out, the intention and purposes for which the reservation was made; i. e., it will be enforced in recognition of and harmony with the equitable interest which the tenant has in the crops, and not in disregard of such interest. On the other hand, the equitable interest of the tenant, or those claiming under him, will be recognized and enforced in accordance with the terms of the contract; that is, they will be enforced—not in derogation, but—in recognition of and harmony with the rights of the landlord as stipulated in the contract. The rights of the landlord and tenant run along parallel lines, and are measured by the terms of the contract. An assignee of the tenant is presumed to be acquainted with the terms and stipulations of the lease, and acquires no greater rights than the tenant had to transfer."

This language and reasoning is equally applicable here. Van Buskirk was the equitable owner of a certain amount of the grain. That amount was to be determined upon final settlement and division of the grain. Until such division Johnson held the legal title to the entire mass as an assurance that the provisions of the contract would be complied with. Johnson hypothecated his interest in the grain to the plaintiff, and it stands in his shoes. The grain has not been divided as provided in the contract. The share coming to plaintiff has not been delivered to it, nor has it been segregated from the common mass. The defendant, with both constructive and actual notice of plaintiff's rights, purchased a large quantity of such grain,—a quantity larger than that which would belong to Johnson both legally and equitably upon a division under the contract. The plaintiff does not seek to enforce the stipulation reserving title in Johnson for the purpose of reaching a quantity of grain in excess of that which equitably belongs to him. It recognizes the equitable ownership of Van Buskirk of one half of the crop; and merely asks that its rights be enforced to the extent of its equitable ownership in the common mass of grain. It is, we think, too clear for argument that one who has converted a portion of a mass of grain upon which another has a lien coextensive with the entire mass

is not exempted from liability because some third person converted another portion of such mass.

It is also contended that there was no evidence of demand or of market value of the wheat; that there was no evidence as to the amount due on plaintiff's mortgage; and that the trial court erred in its rulings on the admission or rejection of evidence. Some of these assignments are not supported by argument and may well be deemed abandoned. We have, however, considered all of them and are all agreed that the evidence amply sustains the findings of the trial court to the effect that there was a demand; that the grain was worth the amount fixed by the trial court and that there was due on plaintiff's mortgage an amount considerably in excess of that for which plaintiff was awarded judgment. We are, also, all agreed that no prejudicial error was committed in the rulings on evidence of which defendant complains, and that the several assignments predicated on such rulings are so obviously without merit as to require no extended discussion.

Judgment affirmed.

BRONSON, Ch. J., and JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.