FIRST NATIONAL BANK OF McVILLE, a Corporation, Plaintiff and Respondent, v. LEVI GUTRU, Defendant and Appellant.

(204 N. W. 887.)

**Chattel mortgages — lessor of farm land, reserving title to tenant's share of crop until settlement and right to deduct to pay for advances made to tenant, has right to deduct such advances made in good faith and ignorance of prior chattel mortgage on crop by tenant.**

1. Where the owner, in a lease of farm land, reserves title in himself to the tenant's share of the crop until division and settlement between them, and also the right to deduct from the lessee's portion a sufficient amount to pay any indebtedness owing from the lessee to the lessor, all loans or advances made to

the tenant or in his behalf by the owner at the request of the former, in good faith and during the term of the lease, may be deducted from the tenant's share of the crop when the division or settlement is made between the parties to the agreement; and the owner of the land, in such circumstances, is not guilty of a conversion of the portion of the tenant's share of the crop, deducted or retained by him to pay such indebtedness, as against the holder of a chattel mortgage on the lessee's portion of the crop, executed by the tenant and of which the owner of the land has no knowledge until after the loans and advances have been made and full settlement and division had between the lessor and the lessee under the lease.

Opinion filed June 16, 1925.   Rehearing denied June 27, 1925.

Chattel Mortgages, 11 C. J. § 398 p. 654 n. 19 New.

Appeal from judgment of the District Court of Barnes County, *Englert,* J.

Reversed.

*Knauf & Knauf,* for appellant.

The landlord has a right to make such lease as he may desire of his land and who deals with the tenant deals subject to all its terms and the tenant and landlord are the ones who act under and interpret the terms of the contract, and having acted upon it a third party cannot question the same.   Union Nat. Bank v. Moline Milburn Stoddard Co. 7 N. D. 201; Scofield Implement Co. v. Minot Farmers Grain Asso. 31 N. D. 605.

*W. J. Courtney,* for respondent.

Any credit extended to the tenant by another can not be paid by the landlord and the crop held to secure it.   Bell v. Hurst, 75 Ala. 44.   This case interpreted a statute which gave the landlord a lien. Gerson v. Norman, 111 Ala. 433.

If the landlord assumes the tenant's obligation to a third party for advances by such third party, and pays the bill, he is not entitled to the lien.   Clinton v. Eaton, 92 Ala. 612.

If a landlord signs a note with the tenant, he can not charge this as an advance.   Brimsberry v. Mansfield, 86 Ga. 792; Ellis v. Jones, 70 Miss. 60; Kelly v. King, 18 Tex. Civ. App. 360.

Advances must be made in good faith, and must be necessary, either

money or merchandise, to make or save the crop.   Not even snuff, shoes, calico.   Ledbetter v. Quick, 90 N. C. 276.

JOHNSON, J.   The defendant was the owner of several quarter sections of land in Stutsman county, one of which he leased to Brooke Dunwoody during the farming season of 1921.   The lease, dated August 26, 1920, is in the usual form and provides that the lessee shall receive one-half of the crop.   It contains the usual provisions reserving title and possession to all of the crop in the landlord, until division and settlement and full performance of the contract by the lessee.   In the concluding paragraph, in consideration of the faithful and diligent performance of certain stipulations by the lessee, the lessor agrees to "release and deliver to the said party of the first part herein named, (lessee) the one-half of all grain so raised and secured from the said farm during the said season or seasons, or the proceeds thereof, if sold, after deducting from such share any just costs or disbursements, incurred and made by said party of the second part (lessor) as hereinbefore provided, *and any indebtedness owing from the first party* (lessee) *to the second party* (lessor.)"

On December 2, 1920, Dunwoody executed a promissory note in the sum of $1000.00 to the Citizen's State Bank of Pingree, and at the same time as security therefor a chattel mortgage upon the "undivided one-half of the crop raised or harvested" upon the premises leased from the defendant Gutru, during the year 1921; on December 23, 1920, the payee named in the note transferred it to the plaintiff, before maturity and for value.

Plaintiff sues in conversion, charging that the defendant converted a portion of the crop covered by the mortgage and raised on the premises described in the lease.   The defense is that the lessor made advances and loans to the lessee (mortgagor,) which under the lease the former was entitled to have repaid out of the latter's share of the crop at the time of division and settlement.   Stated differently, the defendant contends that, under the lease and because of the indebtedness of the lessee to the lessor at the time of the final settlement, he had an interest in the lessee's portion of the crop, which plaintiff alleges he converted, prior to the lien of the plaintiff's mortgage.

The court made findings of fact and conclusions of law and ordered

judgment in favor of the plaintiff in the sum of $600.68, including costs. The defendant appeals and asks a trial anew.

It is not seriously disputed that Dunwoody was indebted to Gutru in substantial sums; the plaintiff, however, contends that the indebtedness was not of such character that the latter could hold a portion of the lessee's share of the crop to discharge it as an advance under the contract; that is, it is contended that the indebtedness does not represent advances legally arising under the contract, and in payment of which the lessor could hold a portion of the crop which otherwise would have belonged to the lessee and been subject to the lien of the mortgage.

In the eighth paragraph the court found that Gutru paid $331.00 as endorser on a note made by Dunwoody and one Phalen; that the instrument represented a part of the purchase price of a threshing machine which Dunwoody and Phalen purchased and operated as partners; and that Gutru could not, as against the plaintiff, deduct this amount from the proceeds of the crop for the reason that the item was not a proper or legitimate *advance* under the lease. In the tenth paragraph the court disallowed a fuel bill on the same ground. If the conclusions of the court upon these two items be correct, and they do not constitute advances or indebtedness, within the terms of the lease, the judgment must be affirmed. Other errors are assigned, but they relate, directly or indirectly, to the correctness of these findings and conclusions.

The testimony with reference to the fuel bill is both oral and written. Exhibit D, is a receipt from the Occident Elevator Company, showing that the defendant paid it $161.30 on September 15, 1921, "for coal charged to B. Dunwoody." The receipt contains the following recital: "Guaranteed by Levi Gutru for B. Dunwoody." Under cross-examination, the defendant testified that Dunwoody "was the one that got me to advance it for him, guarantee it for him," that the tenant could not get the coal without Gutru's guaranty. This witness also said that he knew that the fuel or coal was to be used in operating the machine that belonged to the lessee and Phalen. The machine was used on the land described in the lease and in the mortgage as well as on other lands. The only inference that can be drawn from the testimony is that the lessee requested the lessor to guarantee the pay-

ment of an account for the purchase of coal; and that the coal was used by the tenant in operating a threshing machine in which he was interested as part owner.

With reference to the item of $331.00 the testimony shows that Dunwoody and one Phalen borrowed $330.00 in order to make a partial payment on a threshing outfit and that the State Bank of Edmonds would not make the loan unless Gutru endorsed the note. One Bennett, cashier of that bank, testifying as a witness for the plaintiff, says that "this $330.00 was money borrowed by Dunwoody and endorsed by Mr. Gutru." "Q. Was there any other signature on the note? Was Phalen's signature on that note? A. I believe Harry Phalen's name was on the face of that note." Gutru paid the note at maturity.

Gutru testifies that he had to advance the money for the threshing machine before the lessee and Phalen could get it. He testifies that it was agreed that the entire threshing bill be paid to the partnership so as to enable the operators of the threshing machine to pay laborers and running expenses. This was done and at the time of the settlement with the tenant Gutru retained enough out of the crop to cover the advance of the tenant's share of the threshing bill. The item thus advanced to pay Dunwoody's share of the threshing account was allowed as a proper advance by the court.

The record shows without dispute that the lessor advanced money to the lessee, or guaranteed debts of the lessee, during the period of the lease, and paid them; that deductions were made from the lessee's share of the crop at the time of the settlement to repay fully such advances and indebtedness. The question is whether the obligations thus created and arising between the lessor and the lessee, constitute indebtedness which, under the contract, Gutru could set off against the share of Dunwoody in the crop as against the rights of the plaintiff, the assignee of the mortgage. Gutru did not know of plaintiff's mortgage until the claim of conversion was made against him. The lessor made such advances or guaranteed such accounts, bills or notes at the express request, or with the consent and acquiescence of the lessee. It is not a case where the lessor purchases or acquires outstanding accounts or debts against the lessee and then seeks to withhold a portion of the latter's share of the crop in order to discharge them.

In Aronson v. Oppegard, 16 N. D. 595, p. 600, 114 N. W. 377, this court said: "The intervenor claims that other sums were included in the verdict which render it excessive. The objections to these sums are that they cannot properly be called advances within the terms of the contract. *We think that the lease authorizes the plaintiff to hold the grain for all advances to Jacobson at his request, specifically or generally given or expressly acquiesced in or consented to be considered as advances. The provision of the lease as to advances contemplates that they are to be made as Jacobson and Aronson, the lessee and lessor, should agree.*"

The testimony clearly shows that the indebtedness charged off, when the settlement was made, arising out of the payment of the coal bill and the discharge of the note, was created without collusion and in good faith during the term of the lease; we think it is indebtedness within the terms of the contract, and the lessor had the right thereunder to withhold a sufficient amount of the tenant's share of the crop in order to discharge the same. It is immaterial that the proceeds of the loans or advances were used by the lessee in connection with a business venture in which he was associated as a partner. Owning and operating a threshing machine is common in this state. Many large farmers operate threshing rigs in order to thresh their own grain: others operate for the purpose of threshing their own crop as well as that of others for hire. In any event, under the circumstances detailed in this record, the money advanced by the lessor was clearly an *indebtedness* under the contract, created by the express consent or acquiescence of the lessee.

It must be noted that the lease does not provide for securing and paying *advances* alone; deductions are to be made to pay *"any indebtedness."* It was manifestly the intent of the parties to so frame the lease that the lessor could safely make such advances or loans to the lessee as he deemed safe in view of the crop prospects, and as the parties themselves might agree. We think the only safe rule on this subject is to leave it to the good faith agreement of the lessor and lessee. Of the relationship of landlord and tenant this court has held third parties must take some notice.

In Merchants' State Bank v. Sawyer Farmers' Asso. 47 N. D. 375,

14 L.R.A. 1353, 182 N. W. 263, this court quotes with approval the following from 17 C. J. 381:

"The ownership of realty carries with it as an incident thereto the prima facie presumption of the ownership of both the natural products of the land, such as grass and trees, and the emblements, or annually sown crops; but such presumption is not conclusive. And the owner of land may, in parting with the use of it to another, make such conditions and reservations in relation to the land itself or to the products growing from it, as he chooses, instead of parting with the full right." 17 C. J. 381.

The owner of the land may reserve partial interest in, or full title to the crops, if he so desire, until he settles with his tenant. Angell v. Egger, 6 N. D. 391, 71 N. W. 547. He is the party most vitally interested, as the owner of the land, that a suitable tenant be obtained and that the farm be cultivated in such a manner as to yield the largest returns. The right to contract lawfully and freely with his tenant, in terms that will adequately protect his interest, is one of the constitutional rights of the owner of the land. No statute or decision of this court has abridged the owner's right to protect himself by reserving title to all the crop grown on the land until settlement or division between himself and his tenant. See Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. supra, p. 379, 14 L.R.A. 1353, 182 N. W. 263. In the course of the tenancy an unforeseeable variety of situations may arise where it seems necessary to assist the lessee financially in order to enable him to farm the land to the best advantage. We think it would be unwise to adopt the rule urged by the plaintiff. It would be manifestly impossible to define "advances—necessary to save and raise the crop" so as to meet adequately and fairly all circumstances. The result of such a rule would be uncertainty and that each case would have to be controlled by its own particular facts. We are fully satisfied that the rule we adopt in the instant case is correct, is in conformity with prior decisions of this court, is grounded in common sense, and will render that certain which otherwise would be uncertain. It is better, sometimes, that a rule be certain and known, than that it be correct in the abstract. The rule we adopt meets both the requirement of certainty and correctness.

Judgment reversed and case remanded for further proceedings not inconsistent herewith.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and BIRDZELL, JJ., concur.