FARGO LOAN AGENCY, a Corporation, Respondent, v. L. E.
LARSON and Bresden-Larson Lumber Company, a Corporation,
Appellants.

(207 N. W. 1003.)

**Chattel mortgages — mortgage on crops to be raised on leased ground held
to inure to benefit of mortgagee, relating back to time of execution of
mortgage.**

1. One W., January 25, 1923, executed and delivered to defendant, a chattel
mortgage on the half of the crop to be raised during the farming season of
1923, on certain farm lands therein described, in which he then had no in-
terest as tenant or otherwise. Subsequently he became tenant on shares of
the owner of the land under a farm lease, executed April 9th, 1923.

*Held:* The title, right and interest acquired by the mortgagor by virtue of
that lease, inured to the benefit of the mortgagee as security for the debt de-
scribed in the mortgage, relating back to the time of the execution of the
mortgage.

*Held, further:* That said chattel mortgage attached only from the time of
the execution of the farm lease and to the extent, only, of the mortgagor's
interest in the crops.

**Judgment — plaintiff entitled to judgment in excess of verdict awarded,
entering judgment non obstante for amount which proof showed plain-
tiff was entitled to recover was proper.**

2. Where the plaintiff had moved for a directed verdict, and where, upon the
entire record, it is evident that plaintiff, as a matter of law, was entitled to
judgment on the merits in a sum in excess of the amount awarded by the
verdict of the jury, the amount plaintiff is entitled to recover being shown by
undisputed evidence, and there being no reasonable probability that a different
result would be reached upon another trial, the trial court may properly enter
judgment non obstante for the amount the proofs show plaintiff entitled to
recover.

Note.—(1) Validity of chattel mortgage on crops to be grown on lands in which
mortgagor has no present interest, see annotation in 19 L.R.A.(N.S.) 910; L.R.A.
1917C, 15; 5 R. C. L. pp. 407, 408; 1 R. C. L. Supp. 1390.

(3) Questions not raised in court below not considered on appeal, see 2 R. C. L.
69; 1 R. C. L. Supp. 381; 4 R. C. L. Supp. 78; 5 R. C. L. Supp. 68; 6 R. C. L.
Supp. 64.

(5) Recovery in action for trover as affected by interest of plaintiff, see 26
R. C. L. 1152, et seq.

**Appeal and error — question not raised in trial court will not be considered on appeal.**

> 3. A question not raised in the trial court will not be considered on appeal to the supreme court.

**Trover and conversion — action held prosecuted with reasonable diligence.**

> 4. It is held, for reasons stated in the opinion, that this action was commenced and prosecuted with reasonable diligence.

**Trover and conversion — one having special interest in converted grain may recover only such amount as will compensate him for loss of such interest.**

> 5. One whose interest in grain which has been converted is special and limited, is entitled to recover such an amount only as will compensate him for the loss of, or damage to, that interest.

Opinion filed February 2, 1926.

Appeal and Error, 3 C. J. § 580 p. 689 n. 41. Chattel Mortgages, 11 C. J. § 169 p. 501 n. 26; § 176 p. 505 n. 72. Crops, 17 C. J. § 6 p. 381 n. 32, 33. Judgments, 33 C. J. § 114 p. 1185 n. 52. Trial, 38 Cyc. p 1378 n. 2; p. 1385 n. 46, 48; p. 1386 n. 49. Trover and Conversion, 38 Cyc. p. 2064 n. 84.

Appeal from the District Court of Stark County, *Lembke, J.*
Modified and affirmed.
*Harvey J. Miller,* for appellants.
*G. R. Brainard* and *Otto Thress,* for respondent.

PUGH, District Judge. Plaintiff alleges defendants converted 288 bushels of wheat belonging to it by the terms of a farm lease of the land on which the grain was grown. The case was tried to a jury at the November, 1924 term of the district court of Stark county. At the close of the evidence, plaintiff and defendants made motions for directed verdicts, which motions were denied by the court and the issues submitted to the jury, which rendered a verdict in favor of the plaintiff for $43.43. Thereupon, plaintiff moved for judgment non obstante for a sum equivalent to the value of 288 bushels of wheat at the price of $1.41 per bushel, which plaintiff claimed was the highest market price of the wheat between the time of the alleged conversion and the trial of the case; and defendants likewise moved for judgment of dismissal of said action. The trial court granted plaintiff's motion

and judgment was accordingly entered in favor of the plaintiff in the sum of $406.08 and the costs of the action, and it is from this judgment defendants have appealed.

Plaintiff as owner of the east half of the northwest quarter and lots 1 and 2 of section 19, township 137, north, of range 96, west, situated in Stark county, North Dakota, entered into a leasing contract with Mike P. Wanner, whereby the latter agreed to farm the land, during the farming season of 1923, on shares, plaintiff to furnish the seed and pay half the threshing machine·bill, and each to have one half of the crops raised. It was further agreed that the lessee should sow the land to wheat; that in the event the land should remain listed for state hail insurance, the lessee should pay the one half of same and that his share of the crop should stand as security therefor; that the lessee should pay a note of $149.76 and interest, and that his share of the crops should be charged therewith; that the lessee should deliver lessor's one-half share of the crop in an elevator; that the remainder of the crop should be safely stored by lessee and to remain in the possession of the lessor until all the covenants of the lease should be fulfilled; and, that if any of the land should be planted to grain other than wheat, the plaintiff reserved the right to select wheat in place thereof. There is also a clause in the contract in the form of a mortgage, reciting, in effect, that lessee mortgaged to lessor his interest in the crops to secure the performance of all acts agreed to be performed on the part of the lessee.

January 25th, 1923, Wanner made chattel mortgage in favor of defendant Bresden-Larson Lumber Company, covering one half of the crops to be raised on said premises during the year 1923, to secure his note to defendant in the sum of $1,248.60, which was not paid at the time of the conversion or at the time of the trial.

It is admitted that Wanner harvested from said land 850 bushels of wheat and certain oats and barley. It is undisputed that plaintiff elected to take wheat in the place of the oats and barley. Wanner delivered 434 bushels of the wheat to plaintiff and stored the remainder in a granary on said premises, in accordance with the terms of the contract, to be held until the provisions thereof had been performed. The granary door was locked and the windows fastened or boarded up. It is also undisputed that on September 14th, 1923, defendant Bresden-

Larson Lumber Company, sent trucks from New England to said premises to haul said stored wheat to New England. The granary was broken into by the men in charge of the trucks and 312 bushels of said wheat taken therefrom. Plaintiff learned of the taking of the wheat about December 13th, 1923. Thereafter, plaintiff, through its attorney, G. R. Brainard, interviewed Jones, the agent for Bresden-Larson Lumber Company, upon several occasions, in an effort to obtain an adjustment of the matter; and said attorney had some correspondence with L. E. Larson, an officer of the defendant company, in regard to a settlement of the matters in difference. Jones stated to Brainard that he expected to be able to obtain a settlement of the controversy and that suit would not be necessary. These negotiations for settlement covered some considerable time; they failed, and this action was commenced July 25th, 1924.

We first note appellant's contention that the farm lease was executed by the parties thereto October 28th, 1922. That at the time it was executed, there was no provision therein relative to the note of $149.76; that said provision was written into the contract April 9th, 1923, subsequent to the date of the execution of defendant's chattel mortgage on the crop, and consequently subsequent and inferior to the lien of said chattel mortgage. The undisputed testimony, however, shows the contrary, and is a sufficient answer to appellant's contention. Wanner testified he did not know whether he was to have the use of this land until shortly before seeding time the spring of 1923; that he went to Dickinson three or four times to see Brainard, attorney for the plaintiff, and also wrote letters to him relative to the leasing of the premises, that no contract was made for the land the fall of 1922; that it was signed the spring of 1923, and when signed the conditions relative to the note then appeared in the contract. Brainard, who was looking after the land for plaintiff, testified the negotiations relative to leasing the land between Wanner and himself commenced in September, 1922, and were not completed until the contract, embodying the condition relative to the note, was accepted by Wanner. The evidence shows positively that the contract was not signed until shortly before seeding time, the spring of 1923. It is dated April 9th, 1923, and Wanner, in writing, acknowledged receipt of a copy of it on that date.

Appellant asserts that the note in question was not in the nature of

an advancement under the contract, and did not, therefore, constitute a lien on Wanner's share of the crop, superior to the lien of appellant's chattel mortgage. Wanner understood the contract to be that he was to give to plaintiff, for the lease of the land, one half of the crops grown and harvested therefrom, and in addition thereto, from the other half of the crop was to pay the note, hail insurance, one-half the threshing bill and other advances, if any, made him by plaintiff. The plaintiff so understood the contract, for Brainard testified that Wanner could not have had the use of the land on any other conditions. Indeed there is no controversy whatever between the parties to the lease as to the terms thereof. Each endeavored to perform the conditions of the lease conformably to the mutual understanding of its terms. Both landlord and tenant are in accord that the wheat stored in the granary was in the possession of the plaintiff, and was stored for the purpose of protecting plaintiff, to the extent of its interest therein.

The owner of farm land and the lessee have the undoubted right to incorporate in their contract of lease such conditions in relation to the crops to be raised therefrom as they in good faith mutually agree upon; and those claiming through or under the tenant acquire no greater rights in the subject of the contract, than the tenant has under that contract.

At the time of the execution of defendant's mortgage, the mortgagor, Wanner, had no interest whatever, as tenant or otherwise, in the land in question or the crops to be raised thereon during the farming season of 1923 covered by the mortgage. Later, by and through the execution of the lease contract, executed April 9th, 1923, he did acquire an interest in the property described in the mortgage. The title, right and interest acquired by the mortgagor, by virtue of that contract, inured to the mortgagee as security for the debt owing it by mortgagor. Comp. Laws 1913, § 6731; First Guaranty Bank v. Rex Theatre Co. 50 N. D. 322, 195 N. W. 564. And related back to the execution of the mortgage. Defendant's mortgage, however, attached only from the time of the execution of said lease contract, and to the extent only of the lessee's interest in the crops. Comp. Laws 1913, § 6706; Grand Forks Nat. Bank v. Minneapolis & N. Elevator Co. 6 Dak. 357, 43 N. W. 806; Iverson v. Soo Elevator Co. 22 S. D. 638, 119 N. W. 1006.

The rules for the interpretation of contracts like the one in suit, are

53 N. Dak.—40.

clearly set forth in the case of Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263, as follows:

"It is a well-settled principle of law that the ownership of realty carries with it as an incident thereto the prima facie presumption of the ownership of both the natural products of the land, such as grass and trees, and the emblements, or annually grown crops, but such presumption is not conclusive. And the owner of land may, in parting with the use of it to another, make such conditions and reservations in relation to the land itself or to the products growing from it as he chooses, instead of parting with the full right. 17 C. J. 381. And where the owner of land, in parting with the use of it to another, stipulates that the legal title, control, and possession of all crops shall be in him for certain purposes, that stipulation is entitled to be enforced so as to carry out the intention and purposes for which it was made. But it will not be construed so as to enable the owner to violate the rights of the tenant, nor will it be construed so as to violate the rights of the owner of the land. On the one hand, the legal title reserved in the landlord will be recognized and enforced in accordance with, and to carry out, the intention and purposes for which the reservation was made, i. e., it will be enforced in recognition of, and harmony with, the equitable interest which the tenant has in crops, and not in disregard of such interest. On the other hand, the equitable interest of the tenant or those claiming under him will be recognized and enforced not in derogation, but in recognition of and harmony with the rights of the landlord as stipulated in the contract. The rights of the landlord and tenant run along parallel lines, and are measured by the terms of the contract. An assignee of the tenant is presumed to be acquainted with the terms and stipulations of the lease and acquires no greater rights than the tenant had to transfer."

Underhill, Land. & T. § 639; Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263; First Nat. Bank v. Gutru, 52 N. D. 918, 204 N. W. 887; International Harvester Co. v. Osborne-McMillan Elevator Co. 51 N. D. 367, 199 N. W. 865; Maher v. Boehmer, 49 N. D. 592, 192 N. W. 723; Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A.1917E, 298, 162 N. W. 543.

Applying these well-settled rules of law to the uncontradicted evidence in the case, it is plain that the plaintiff had an interest in the grain stored in the granary on said premises and taken by defendants, as security for the performance of the contract; that is, for the payment of the one half of the hail premium, the one half of the expense of threshing the grain, the wheat plaintiff elected to take in the place of oats and barley planted on the land and harvested therefrom, and the note in question. The undisputed testimony shows that the value of plaintiff's interest in said wheat was $247.45; that as against this the tenant was entitled to a credit of $13.50 for twine furnished for the harvesting of the crop and to the nine bushels in excess of the half delivered plaintiff by him, and apparently not sold, prior to the trial.

Appellants further contend that the court erred in the denial of their motions made, one at the close of the case and the other subsequent to the verdict, for a dismissal of the action, on the ground, amongst others, that the evidence was insufficient to sustain a finding of the conversion of the wheat by defendant.

It is not disputed by defendants that shortly prior to the time of the taking of the grain, Jones and Larson had several conversations with Wanner at New England and at the farm in question requesting permission to take this wheat and apply it on the chattel mortgage aforesaid; and that Wanner stated to them that he would not let them have the wheat for the reason that it belonged to plaintiff. He testified: "I said the thing over and over lots of times, I could not let him have it (the wheat) before I settled with the Fargo Loan Agency." Notwithstanding these statements on the part of Wanner, and notwithstanding that appellants knew that Wanner was but the lessee of the land, defendants forcibly broke into the granary, which was locked and otherwise fastened, and took therefrom 312 bushels of wheat. As we view the evidence in the case, and as the jury by their verdict found, 'this taking of said grain by defendants was a tortious act, a wrongful exercise of dominion over this property inconsistent with, and in defiance of, the rights of plaintiff, and constituted a conversion of the wheat. Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266; Rolette State Bank v. Minnekota Elevator Co. 50 N. D. 141, 195 N. W. 6; 38 Cyc. 3032.

Appellant alleges the evidence is insufficient to support a judgment for the plaintiff because there was no evidence of the market value of the wheat converted at New England, as of the time of conversion or at any other time, and that the action was not commenced within a reasonable time.

To prove the highest market value of the grain converted between the time of conversion and the time of trial, plaintiff produced as a witness the operator of an elevator at Dickinson who testified the highest market value of wheat at Dickinson was $1.43 and that No. 3 wheat was three cents less than No. 1. This evidence was objected to as "irrelevant and immaterial," "not within the issues," "that the value asked of the witness is not the value of the grain at the time of conversion," and, "that the action was not commenced within a reasonable time after conversion." It is obvious that these objections do not point out to the court and opposing counsel that the evidence was objected to because the market values at New England were not the subject of inquiry. A general objection is sufficient if the grounds of the objection are perfectly obvious and the evidence is wholly inadmissible for any purpose. The object of requiring the objector to be specific is to enable the other party to obviate the defect, if possible. If it is apparent the defect cannot be remedied, then the specific objection would not aid the adverse party. Huston v. Johnson, 29 N. D. 546, 151 N. W. 774; Raich v. Lindebek, 36 N. D. 133, 161 N. W. 1026; International Harvester Co. v. Chicago, M. & St. P. R. Co. 186 Iowa, 86, 172 N. W. 471. Counsel did not at any time during the trial direct the attention of the court to his contention that the measure of damages was the market value of the grain at New England. In his motion for directed verdict made at the close of the case, and again in his motion after verdict, he makes no contention whatever that the evidence is insufficient in this regard. See Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122; Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Horton v. Wright, B. & S. Co. 43 N. D. 114, 174 N. W. 67. Defendants offered no testimony relative to the accessibility of these two markets to the farm in question, the market price of wheat, the conditions in relation to the two markets, nor that there was any difference in the market price of wheat in said markets, having in mind the expense of moving

the grain from the farm in question to either market. Both markets are situated in the same general grain farming community, and both were used by the tenant herein in the marketing of his grain during the period of eight or nine years past. It is our opinion this contention of the appellants is without merit.

The evidence discloses that negotiations between plaintiff and defendants continued until after the action was commenced, having for their object the adjustment of the subject of this action. Several interviews took place; defendants asked for a statement from plaintiff of its claims; and plaintiff was informed that suit would be unnecessary. The action was brought to trial at the next succeeding (November, 1924) term of the district court. The facts being undisputed, it became a question of law for the court to determine, whether, under the facts and circumstances in the case, the action had been commenced and prosecuted with reasonable diligence. His finding that it had been so commenced and prosecuted is right. First Nat. Bank v. Red River Valley Nat. Bank, 9 N. D. 320, 83 N. W. 221. Evidence of the highest market value of the grain between the time of conversion and the trial was admissible. Comp. Laws 1913, § 6168.

It is also contended that it was error to set aside the verdict of the jury and to enter judgment for the plaintiff for $406.09 on plaintiff's motion made non obstante veredicto.

"Judgment notwithstanding the verdict may be ordered only in a case where it clearly appears from the whole record that the party who moves for such judgment is entitled to a judgment on the merits as a matter of law." Sheffield v. Stone, O. W. Co. 49 N. D. 142, 190 N. W. 315, and cases therein cited. In this case the record shows clearly, that defendants took from the granary located on the premises in question 312 bushels of wheat. The plaintiff's proof establishes beyond question, a tortious taking. There is no dispute of the facts that the wheat so taken was grown on and harvested from said premises, and that said premises were the property of plaintiff; nor that Wanner, the tenant, placed said wheat in said granary, in accordance with the provisions of the lease. The evidence shows the plaintiff's interest in the grain, and the market value thereof. These facts are either admitted by the defendants or are not contradicted by substantial evidence in the case. Upon the whole record it is evident that plaintiff, as a mat-

ter of law, was entitled on the merits to judgment in a sum in excess of the amount of the verdict of the jury. Nor can it be said from the record in the case that there is a reasonable probability that a different result would be reached should a new trial be granted. Hence it was the duty of the trial court in this case to enter judgment non obstante. See also Larson v. Albers, ante, 340, 205 N. W. 875; Company A, First Regiment v. Hughes, ante, 291, 205 N. W. 722; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044.

It is our opinion, however, that the judgment ordered by the court, and as entered, is in excess of the amount the evidence shows plaintiff to be entitled to.

The contract provides that the tenant shall first deliver the landlord's share of the grain in an elevator; and that the remainder shall be stored and remain in the possession of the landlord as security for the performance of the conditions of the contract incumbent on the tenant to perform. The plaintiff received its share of the wheat in accordance with the terms of the contract. The plaintiff's interest, if any, in the remainder would be a special interest, to the extent of the moneys due it under the terms of the contract. As we have seen plaintiff's interest in the wheat in question was $247.45 less a credit of $13.50 and nine bushels of wheat of the value of $12.60, the excess over the half of the wheat raised on the premises, received by plaintiff. Plaintiff was not entitled to judgment for any greater sum with interest at six per cent than its actual interest in the grain. Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558. We note also, that counsel recognized this rule, for, in his motion for judgment he recites that plaintiff was entitled on the undisputed evidence to 425 bushels and a further amount of wheat to compensate it for advances of hail insurance, threshing machine bill, oats and barley exchanged for wheat in the sum of $116.43, and the further sum of $158.99, the amount of the note and interest.

This case is, therefore, remanded to the district court with directions to modify the judgment entered therein, in conformity with this opinion; and, as so modified, the judgment will be affirmed. No costs on this appeal will be awarded either party.

BURKE, BIRDZELL, NUESSLE, and JOHNSON, JJ., concur.

Mr. Chief Justice CHRISTIANSON did not participate, Honorable THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in his stead, by request.