STRAIN, Superintendent of Banks, Respondent, v. SHIELDS, Appellant.

(256 N. W. 268.)

(File No. 7571.    Opinion filed September 17, 1934.)

*Irvin H Myers,* of Watertown, for Appellant.

*Perry F. Loucks,* and *Alan L. Austin,* both of Watertown, and *J. T. Grigsby,* of Redfield, for Respondent.

ROBERTS, P. J. Defendant, the owner of a residence lot in Watertown, agreed in writing to convey it to one Cecil Rice on payment of $1,850 in monthly installments of $15 and accrued interest. Rice assigned the contract to Frank C. Tenney. This assignment was made on June 7, 1919, with the consent of the defendant. Tenney, as the first party, entered into a written agreement on January 27, 1920, with A. F. Hilts, as second party, reciting that, "in consideration of the sum of $400 cash and a promissory note for $855 made payable within six months after date, party of the first part agrees to assign to the party of the second part all right and title to the following described property * * * subject to the following conditions: Party of the second part agrees to keep up all payments each month on contract for deed, which said contract party of the first part now holds of aforesaid property, and which contract calls for the payment of a balance of Seventeen hundred forty-five dollars, payable in monthly installments of Fifteen dollars and interest on the principal sum. Payments to be made on the first day of each month beginning Feb-

ruary 1, 1920, to F. E. Tenney, agent for the party of the first part. Party of the second part agrees to assume all obligations of the party of the first part in said contract. Upon payment of the aforesaid principal note of Eight hundred fifty-five dollars party of the first part agrees to assign to the party of the second part all his right and title to the contract for deed to the aforesaid property."

Tenney transferred the note executed by Hilts to the Dempster State Bank, and thereafter Hilts made renewals of the note to the bank. The last renewal note under date of June 15, 1923, was for the amount of $1,038, payable in six months after date, with interest at 10 per cent per annum. Thereafter Tenney made a written assignment dated June 2, 1925, to the superintendent of banks in charge of the Dempster State Bank to his right, title, and interest in and to the contract made between the defendant and Cecil Rice. Plaintiff immediately notified the defendant by registered mail of such assignment and that the holder of the assignment claimed the right to a deed upon completion of payments under the contract for deed.

Hilts made payments on the contract for deed until April 6, 1926, when he paid to the defendant the balance on the contract obtained by mortgaging the premises to the Midland National Life Insurance Company. A deed was then executed by the defendant to the wife of A. F. Hilts at his request.

Plaintiff contends that he was prevented from collecting the amount of the note for $1,038 when the defendant conveyed the property to Mrs. Hilts. Defendant in her answer alleges that, if any note or notes were given by Hilts to Tenney in connection with the assignment of the contract, and the same were transferred to the bank, they were given to represent part of the unpaid balance of the contract amounting to $1,745 at the time of the execution of the assignment by Tenney; that she has fully complied with all the terms of the contract which was entered into between her and Rice, and which was thereafter assigned to Tenney and thereafter by Tenney to Hilts; and that Hilts having made all payments due under the contract, was entitled to a deed of conveyance at the time of the transfer of title to his wife.

This is a second appeal of this case. At the conclusion of the testimony, the court in the first trial instructed the jury to

return a verdict for the plaintiff. The judgment entered on such verdict and order denying motion for new trial were reversed by this court. Smith v. Shields, 56 S. D. 599, 230 N. W. 26; Id., 59 S. D. 447, 240 N. W. 498. The court in the second trial granted a judgment in favor of the plaintiff notwithstanding the verdict. This appeal is from the judgment so entered.

The agreement between Tenney and Hilts was a contract to assign upon the performance of certain obligations, to be performed by Hilts, and did not vest title in the contract for deed in Hilts until such performance. If the obligation assumed by the prospective assignee was fully performed as defendant Shields contends, the agreement between Tenney and Hilts would then have the effect of an equitable assignment, vesting title in the contract for deed in Hilts. The defendant was not a party to this agreement between Tenney and Hilts, and the evidence does not indicate that the agreement was recorded or when, if ever, defendant saw such agreement. It recites that, "in consideration of the sum of $400 cash, and a promissory note for $855 made payable six months after date," Tenney agrees to assign to Hilts all his right and title to the property subject to the condition that Hilts is 'to keep up all payments each month on contract for deed * * * and which contract calls for the payment of balance of $1,745." There is the further recital that Tenney agrees to assign "upon the payment of the aforesaid principal note of $855." If the contention of the defendant is sustained that the note for $855 represented a part of the $1,745, balance due under the original contract, Hilts contracted to pay $2,145 which has been fully paid by him. If, on the other hand, the note for $855 was an additional sum, Hilts agreed to pay $3,000 for the property, of which the principal amount of such note with accrued interest is unpaid.

The granting of the motion of plaintiff for judgment notwithstanding the verdict of the jury in favor of the defendant challenged the sufficiency of the evidence to sustain the defense interposed by defendant. Considering all the evidence in the light most favorable to the .defendant, was it such that the court was justified in granting such motion? While the evidence should thus be considered in its most favorable light, yet any evidence going to sustain defendant's defense, however slight and irrespective of the measure and character of that to which it is opposed, will not

sustain a verdict. Though the evidence was conflicting, if it was of such a conclusive character that a jury could not without acting unreasonably decide in favor of the defendant, it was the duty of the court, in the exercise of sound judicial discretion, to grant the motion for judgment notwithstanding the verdict. Drew v. Lawrence, 37 S. D. 620, 159 N. W. 274; Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 72 A. L. R. 7; Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181.

It is the undisputed evidence that Tenney indorsed and transferred the note for $855 to the Dempster State Bank, and thereafter Hilts executed renewals of this note to the bank. The note for $1,038 given by Hilts to the bank, dated June 15, 1923, was the fourth renewal. The witness Philippi, testifying for the plaintiff, said that, a few days before the formal written notice of the assignment by Tenney to the bank was prepared and mailed to the defendant, he called at the home of the defendant, and had with him the original contract for deed, the assignment of that contract from Rice to Tenney, the agreement to assign between Tenney and Hilts, and the promissory note for $1,038 given by Hilts to the bank, that he informed the defendant that he represented the suspended Dempster State Bank, and that he was interested in the contract for deed between the defendant and Rice. Concerning the conversation with the defendant, he testified: "I told her that the basis of our interest in the property was the assignment of the original contract between Rice and herself, assignment from Tenney to the Dempster State Bank. I told her I had the original papers with me at the time. She said nothing in response to the information I gave her as to the interest of my bank in that property and my desire to close the matter out if I could. I told her that I had the original papers with me. She did not ask to see them. I told her that the bank had approximately eleven to twelve hundred in it and told her that I thought it might be possible to take up the contract for deed because it had too long to run. To my suggestions she told me she preferred the payments as they were, $15 per month, rather than the whole thing."

Defendant testified: "I received that registered letter or notice signed by Mr. Phillippi after Mr. Phillippi had called at my house. The substance of the conversation between me and Mr. Phillippi at that time at my house was that he first asked me

whether that place was insured and whether the taxes were paid. I told him I did not know. I supposed they were. He asked me how much I had coming yet and I told him about $800. After that he asked me if I would take $600 and I told him I could not do that but would make it worth while. I said I would take $750 if he wanted to pay it all and he said he would see me again and then I got that letter. That is all that was said at that time. Mr. Phillippi did not show me anything in the nature of papers. He never mentioned anything as to the interest of the Dempster State Bank. I do not remember that he mentioned anything as to the Dempster State Bank having an assignment of the Rice contract. He said he could come back again. That was the last I saw of him."

On cross-examination she testified: "Mr. Phillippi saw me before I got this notice. I am pretty sure that the first I heard of it was when he came down to the house. That was just a few days before I got the notice from Mr. Phillippi on behalf of the Dempster State Bank. When I got this notice in writing from the Dempster State Bank I knew that the Dempster State Bank claimed that they were the owners by assignment, in writing, of this contract for deed I had made to Rice. I also knew from what Mr. Phillippi had told me that he was with the Banking Department. After I got this notice I did not try to find Mr. Phillippi to see this contract or assignment that he said in this notice that he held. * * * I never wrote him and asked him to show me the assignment he claimed to have. He said he was coming back some time. Mr. Phillippi never mentioned that he held Hilts' note. I am pretty sure about that. He never told me that the Dempster State Bank had between eleven and twelve hundred dollars coming from Mr. Hilts and that they held my contract for deed as sec. ity for that reason they were interested in the deal."

The witness was then asked:

"Q. As a matter of fact, Mr. Phillippi must have told you that he had a note made by Hilts and when payments were made you would issue a deed to them, didn't he? A. I don't remember.

"Q. That is not in this notice you have got, was it, isn't anything in this notice you have got, is there? A. I don't think there was.

"Q. So when you testified on the former trial of this action, they had a note of Hilts, 'came to see about I should issue the deed to them,' Mr. Phillippi must have told you they had a note from Hilts, didn't he? A. I think Hilts told me about the note.

"Q. You think now it was Hilts told you that? A. Yes."

Defendant called A. F. Hilts as a witness. With reference to the transaction with Frank C. Tenney, he testified: "He brought the papers over to me and told me to sign. I was working on the car and of course, greasy. I wiped my hands off and signed the agreement. And then he had this note. I asked him about that and what that was for, and he said that was to cover partially of the money and the transactions; that I could pay that at any time, any time before the agreement was paid it was O. K., and if I could not at the time the fulfilment of the agreement was made, the note was to be returned to me cancelled."

Again it appears from the testimony of this witness:

"Q. Please state again what Tenney said to you in regard to that $855 note. A. As I said, covered part of the payment, and if I could not pay that note I did not have to pay it at the expiration of the time of the filling of agreement of $15 a month, and interest on the original contract, why then the note was to be returned to me at that time, cancelled.

"Q. What, if anything, was said between you and Tenney in regard to the contract between Mrs. Shields and Cecil U. Rice? A. Quite a while ago. Hard to remember.

"Q. What, if anything, was said by Tenney with reference to the amount you were to pay for this property? A. It was spoken of, oral agreement was given between Tenney and myself.

"Q. What did he say, give the substance of what he said. A. The substance was—not much substance in regard to that.

"Q. What was said by Frank C. Tenney to you at that time as to what amount you were to pay for this property you were about to purchase from him? A. As I remember. there was no word said in regard to the amount only that the agreement was—

"Q. No, what did he say? A. The agreement between F. E. Tenney and myself was O. K. with him.

"Q. He said that the agreement with F. E. Tenney and yourself was O. K. with him. A. Yes, sir.

"Q. What else was said in relation to that, if anything? What, if anything, did he say with reference to you having seen F. E. Tenney, the father, what did you say to him? A. It was no conversation to speak of outside of this. Just them few words. About all there was to that."

Defendant relies upon the testimony of Hilts to justify the submission of the case to the jury and its verdict. Plaintiff insists that the defendant is not a stranger in the sense in which the term is employed in the statement of the principle that the parol evidence rule has no application to strangers; that the contract to assign is the foundation of the claim of defendant's right to convey to Hilts or other person designated by him; and that, taking such agreement out of the case, the defendant would have no basis for her conveyance to Mrs. Hilts. Plaintiff urges that we reconsider the holding on the former appeal in this case. But, conceding that defendant is a stranger within the parol evidence rule and that the testimony of Hilts was admissible, we are of the view that the evidence was insufficient to present issuable facts for the jury. The bank, it appears from the record, had no knowledge of the claim of an oral agreement between Tenney and Hilts to the effect that the note was given to represent a part of the unpaid balance of the contract for deed. Hilts, the maker of the original note for $855, with knowledge of the alleged want of consideration, having executed a renewal to an indorsee, could not set up want of consideration on the renewal note. Muschelwicz v. Tidrick, 40 S. D. 435, 167 N. W. 499. The fact that Hilts made renewals to the bank indicates the interpretation which he placed upon the original contract. His conduct unequivocally contradicts his assertion that the note of $855 was a part of the balance on the contract.

Assignments of error as to the rejection of testimony offered by the defendant need not be discussed. It's admission would not have established a defense. It follows that the trial court properly granted judgment notwithstanding the verdict.

The judgment appealed from is affirmed.

POLLEY, WARREN, and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.