UNKE, Appellant v. THORPE et al., Respondents

(59 N. W.2d 419)

(File No. 9347. Opinion filed June 25, 1953)

Rehearing denied August 12, 1953

**Bielski, Elliott & Lewis,** Sioux Falls, for Plaintiff and Appellant.

**Gale B. Wyman,** Belle Fourche, for Defendants and Respondents.

SMITH, J.   The complaint of the plaintiff, W. E. Unke, prays for damages because the defendants, F. L. Thorpe and C. W. Waters, who had agreed in writing to sell and deliver to him "600 to 800" bushels of alfalfa seed, delivered to him only about 301 bushels of such seed.   The defense that the contract was induced by fraud was sustained by the trial court and judgment dismissing the action was entered.   The principal assignments question the sufficiency of the evidence to support the findings, and whether the findings support the judgment.   Because we have concluded the undisputed facts reveal that plaintiff does not have a cause of action, we affirm the judgment.

The trial was to the court without a jury.   The evidence we are about to outline was received subject to the objection of the plaintiff that the contract in writing supersedes all of the oral negotiations or stipulations of the parties. Cf. SDC 10.0604.

Mr. Unke, the plaintiff, operates a seed and feed mill at Bridgewater, South Dakota.   He deals in a considerable quantity of alfalfa seed, principally at wholesale to dealers. In the past he had purchased such seed through one O. Christopherson, who operates a seed and feed mill at Newell, South Dakota.   In a telephone conversation on October 29, 1950, Christopherson advised Unke he "had two farmers that had considerable alfalfa seed" to sell. Unke arrived at Newell the next morning, examined a sample of the alfalfa seed which had been cleaned at a Newell elevator, and together with Christopherson drove into the country a few miles to the ranch of the defendants Thorpe and Waters.   There they talked with Mr. Thorpe, examined some of the threshed seed in sacks and watched the threshing operation in process. Mr. Waters was not at the ranch and Mr. Thorpe did not care to deal without him.   An arrangement was made for Thorpe and Waters to meet Unke at the Christopherson elevator in Newell at one o'clock that afternoon.   After the parties met some talk was had about the amount of seed the defendants would have to sell, and about the price for which they would sell.   After they had agreed on a price of 53 cents per pound if Mr. Unke would pay Christopherson's charges for cleaning the seed after it was threshed, and it appeared that they were

going to reach a bargain, Unke prepared a written contract and tendered it to the defendants for their approval. In that writing he had inserted the figures "600 to 800" bushels. There is a conflict in the testimony with reference to the conversation that then followed about those figures. The defendants and two others present testified that they said they did not know how much seed they would have and they were selling only their 1950 crop. The plaintiff and his employee who was present deny that anything was said about the 1950 crop. The plaintiff, on the other hand, testified in substance that he said he must have a definite figure because he was intending to sell seed against this contract. Defendants deny that such a statement was made. According to other testimony plaintiff said he wanted a definite figure in there so in case the price went down the defendants could not buy up all of the seed in the area and load it on him at the contract price.

The contract was eventually signed and reads as follows:

"Purchase or Delivery Order

Bridgewater Milling Co.            No. 517
Bridgewater, S. D.

To Thorp & Waters       Date          Oct. 30, 1950
Address Box 427 Deadwood, S D    Ordered by     W E Unke
Deliver to   Bridgewater Milling Co. Date wanted    When cleaned
       Bridgewater S D       Via truck       next 30 days
                     Terms     Cash
                     F.O.B.      Christopherson Elev.

| Quantity | Unit | Description of articles, including special instructions as to quality, size, and style of package, etc. | Unit Price |
|---|---|---|---|
| 600 to 800 | Bu. | S.D. Alfalfa-(like Sample taken) at to be recleaned at Christopherson Elev. Buyer to pay cleaning charge.—advance payment—$2500.00 | 53.00 cwt |

Seller—
Seller—F. L. Thorpe (signed)

Issue only one copy of invoice and unless
otherwise instructed mail direct to      Bridgewater Milling Co.
      Bridgewater Milling Co.      By     W. E. Unke"
   at
Seller—C. W. Waters—Partner

Unke arranged with Christopherson to clean the seed. The threshing continued until about November 20th, and each days' threshing was delivered to Christopherson at Newell for cleaning. However, only 301 bushels of seed like the sample Unke had examined on October 30th were recovered by the threshing and cleaning process. That seed was delivered to Mr. Unke. In addition, about 30 sacks of third and fourth grade seed were recovered and sold to Mr. Christopherson. There is no indication in the evidence that a greater amount of seed like the sample could have been recovered by the Christopherson equipment.

It is axiomatic that the surrounding circumstances from which a contract stems are to be considered when interpreting its provisions. IX Wigmore, Evidence, 3d Ed., § 2471; 3 Williston, Contracts, Rev. Ed., § 618; Janssen v. Tusha, 66 S.D. 604, 287 N.W. 501; and Eustis Mining Co. v. Beer, Sondheimer & Co., D.C., 239 F. 976. Of controlling significance here are the facts that Unke appeared at Newell because some ranchers had alfalfa seed they desired to sell; there he examined some of the seed which had been cleaned, then he went to their ranch, watched the threshing process, and examined sacks of the threshed seed. The contract which he wrote provided that the seed he was purchasing was to be cleaned at his cost at the Christopherson elevator and provided also for delivery "when cleaned next 30 days". When the contract of these parties is read in the light of its setting and object, and the oral expressions of intentions of the parties are excluded from consideration, cf. IX Wigmore, 3d Ed., Evidence, § 2471, we think it is obvious that the contract is not subject to the interpretation placed upon it by plaintiff, viz., that it provides for the delivery by defendants to plaintiff of not less than 600 nor more than 800 bushels of alfalfa seed in general of the quality exhibited at the time the contract was made. It is our opinion that the only interpretation which the undisputed surrounding circumstances and the words of the contract warrant is that the parties contracted for the delivery of 600 to 800 bushels of a specific crop of alfalfa, viz., the crop the defendants were threshing. Thus the question arises whether, having acted in good faith, and having delivered to plaintiff all of the seed of the describ-

ed quality the mutually contemplated crop produced, are they under any further obligation to plaintiff? This court answered that question in McCaull-Webster Elevator Company v. Steele Brothers, 43 S.D. 485, 180 N.W. 782.

In that case plaintiff and defendant entered into a written contract whereby defendants contracted to sell to plaintiff 5000 bushels of good sound, dry and merchantable corn to grade 3Y, "said grain being now in my possession". Both parties had in contemplation as the subject matter of this contract corn raised by defendant and standing in his fields. It turned out that they were in error in their mutual assumption; the corn would not grade 3Y. The defendant failed to deliver any corn and plaintiff sought damages. This court said, "In this case it is perfectly clear that both parties were so confident that the corn, then in the minds of the parties, would fulfill the conditions as to grade, that they made no provision whatsoever as to what should be done if this corn would not test No. 3. They contracted in the full belief that defendants had in their possession 5,000 bushels of yellow corn that would, at the time for delivery, grade No. 3. No corn that would, by mere lapse of time, become No. 3 corn, was in possession of defendants. Both parties assumed, as the very basis of the contract, that corn that would fulfill this contract did exist in the possession of defendants. Being mistaken as to this essential fact, there was no binding contract, * * *." And it was further written, "Let us suppose that No. 3 corn had not been worth the contract price and defendants had gone out and purchased No. 3 corn and tendered same to plaintiff, plaintiff knowing such fact would have had the right to, and would undoubtedly, have refused to accept such corn for the very simple reason that it never agreed to buy any corn other than the corn in possession of defendants when the contract was entered into."

■ ■ In the foregoing case we grounded our holding on the mutual mistake of the parties. Restatement, Contracts, has formulated the applicable rule as a phase of the doctrine of impossibility in these words:

§ 460 "(1) Where the existence of a specific thing or person is, either by the terms of a bargain or in the contempla-

tion of both parties, necessary for the performance of a promise in the bargain, a duty to perform the promise

"(a) never arises if at the time the bargain is made the existence of the thing or person within the time for seasonable performance is impossible, and

"(b) is discharged if the thing or person subsequently is not in existence in time for seasonable performance,
unless a contrary intention is manifested, or the contributing fault of the promisor causes the non-existence.

"(2) Material deterioration of such a specific thing or physical incapacity of such a specific person as is within the rule stated in Subsection (1) has the same effect as non-existence in preventing a promisor's duty from arising or in discharging it, except that if the other party remains ready and willing to render in full the agreed exchange for whatever performance remains possible, the promisor is under a duty to render such partial performance * * *."

In dealing with this rule of impossibility, Williston, Contracts, § 1946, among others cites the case of Barkemeyer Grain & Seed Co. v. Hannant, 66 Mont. 120, 213 P. 208. The written contract in that case confirmed the purchase and sale of "about 6,000 pounds of alfalfa seed", but only 1800 pounds were delivered and the purchaser sued for damages. It was established by extrinsic evidence that the subject matter in contemplation of the parties was the 1919 crop of alfalfa seed of the defendant. Except for 200 pounds retained for reseeding defendant delivered all his crop. After approving the resort to extrinsic parol evidence to identify the object of the written contract, the court said,

> "Since the parties in this case clearly contemplated delivery out of the crop of seed raised by the defendant, the plaintiff could not have been required to accept alfalfa seed bought upon the general market. For the same reason the plaintiff could not demand performance of the defendant in that manner. Had the defendant sold his crop elsewhere, or even through negligence allowed it to be destroyed, he would have been liable for failure to deliver all that was within his power to deliver. But he can-

not be subjected to damages for failure to do that which, through no fault of his own, was impossible."

As indicated, we hold that plaintiff does not have a cause of action against defendants. It follows that the errors of the trial court, if any, were without prejudice to plaintiff. Dixson v. Ladd, 32 S.D. 163, 142 N.W. 259, 46 L.R.A.,N.S., 206, Ann.Cas.1916A, 253; and Sejnoha v. Buchanan, 71 S.D. 220, 23 N.W.2d 142.

The judgment of the trial court is affirmed.
All the Judges concur.