**RENNER ELEVATOR CO., Plaintiff and Respondent,**

v.

**Wilbur SCHUER, Defendant and Appellant.**

No. 12102.

Supreme Court of South Dakota.

June 15, 1978.

Amy K. Kelley, Aberdeen, argued the cause. With her on the brief was Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and respondent.

Steve Jorgensen, of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

This is an action for breach of contract. Plaintiff is in the business of purchasing and selling grain. Appellant is a farmer. On June 7, 1974, and June 20, 1974, plaintiff and appellant entered into contracts for the sale by appellant and the purchase by plaintiff of 30,000 bushels of corn for delivery in January, 1975. The agreed prices were those quoted on the June 7 and June 20 commodity markets for January delivery of corn.

Appellant never delivered any corn to plaintiff. Because of drought and hail damage, appellant harvested only a fraction of the corn he expected in 1974. He retained the 3,500 bushels that he did harvest as feed for his livestock, later selling some 2,683 bushels that he did not feed to someone other than plaintiff. There was evidence that sufficient corn was available in the area for purchase by appellant to fulfill his contractual obligations.

Immediately after entering into the contracts with appellant, plaintiff executed agreements with the Pillsbury Company for the sale of 30,000 bushels of corn. The differences in price between plaintiff's contracts with Pillsbury and its contracts with appellant reflected freight charges and plaintiff's profit. On February 1, 1975, plaintiff compromised and settled its obligations to Pillsbury under these contracts for $18,412.50, an amount substantially less than the difference between the contract prices and the market price range throughout January of 1975.

The trial court directed a verdict for plaintiff on the issue of liability and submitted the issue of damages to the jury. The jury returned a verdict for plaintiff in the amount of $2,800. The trial court then entered judgment notwithstanding the verdict for plaintiff in the amount of $18,412.50, the amount of plaintiff's settlement with Pillsbury, plus interest thereon from February 1, 1975, for a total of $20,292.09. Appellant appeals from that judgment. We affirm.

At trial, appellant offered to prove that testimony concerning certain pre-contract conversations between plaintiff's agents and appellant would have revealed that both parties intended the term "15,000 bushels of corn" in each of the contracts to refer to appellant's 1974 corn crop. By thus specifying that particular grain as the subject of the contract, appellant sought to avail himself of the defense of commercial impracticability set forth in SDCL 57 -7--37 and the defense of impossibility recognized by this court in *Unke v. Thorpe*, 75 S.D. 65, 59 N.W.2d 419, and *McCaull-Webster Elevator Co. v. Steele Brothers*, 43 S.D. 485, 180 N.W. 782. Appellant contends that the trial court erred in applying the parol evidence rule to exclude his proffered evidence of the substance of those conversations.

We have summarized the nature and effect of our parol evidence rule, SDCL 53- -8-- 5, by holding that:

"The rule is substantive in character and not merely a rule of evidence. . . It is also well settled that parol evidence is inadmissible to vary, contradict or add to a contract which has been reduced to a writing that is clear, definite and complete, and in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract." *Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 87 S.D. 480, 484, 210 N.W.2d 158, 160.

We conclude that the contracts in question are clear, definite and complete and that the trial court was correct in so ruling.

Appellant argues, however, that *McCaull-Webster Elevator Co. v. Steele Brothers*, supra, and *Unke v. Thorpe*, supra, support the admissibility of the evidence in question. We do not agree. Both of those cases are distinguishable from the case at bar. In *McCaull-Webster*, the contract specified the corn as "said grain being now in my possession." The court held that "[t]he contract itself showed that the parties had in mind certain corn. It was therefore competent to show by parol what corn defendants had in their possession." 43 S.D. at 487, 180 N.W. at 782. In this case, the contracts contain no similar provision. The court in the *Unke* case was not called upon to address the question of the admissibility of parol evidence to add to or vary the terms of a contract. Rather, *Unke* held that evidence of the circumstances surrounding a transaction may be considered to interpret an agreement. The court concluded that in view of the fact that the purchaser had come to the sellers' ranch and had observed the threshing operations and had examined sacks of threshed seed, the contract could be interpreted only as calling for the delivery of the specific crop that the sellers were then threshing. Appellant's proffered testimony was not intended to show the circumstances from which the contracts stemmed, but rather was offered to prove the intention of the parties through the substance of conversations preliminary to the contract. This appellant could not do under our parol evidence rule, for even in the *Unke* case the oral expressions of the intentions of the parties were excluded from consideration. Accordingly, we hold that the trial court correctly excluded the evidence offered by appellant.*

Appellant next contends that the court erred in entering judgment notwithstanding the verdict for $20,292.09, the full amount of plaintiff's claim, after the jury had returned a verdict in the amount of $2,800. Appellant argues that a factual issue of the reasonableness of plaintiff's "cover" remained for consideration by the jury. Appellant further suggests that plaintiff had no right to challenge a verdict in his favor by motion for judgment notwithstanding the verdict.

■ Plaintiff preserved its right to judgment notwithstanding the verdict by moving for a directed verdict at the close of the evidence. SDCL 15–6–50(b). A motion for judgment notwithstanding the verdict is retroactive in effect and relates back to and is based upon the previous motion for directed verdict. *Barnhart v. Ahlers*, 79 S.D. 186, 110 N.W.2d 125; *Profit Counselors, Inc. v. Knight*, 82 S.D. 350, 146 N.W.2d 60. In conformity with this view, this court has stated:

"In reviewing a ruling on a motion for a directed verdict and its complementary motion for judgment n. o. v. an appellate court views the evidence in a light most favorable to the party against whom the motions were directed; then without weighing the evidence it must decide if there is evidence which would have supported or did support a verdict in his favor." *Corey v. Kocer*, 86 S.D. 221, 226, 193 N.W.2d 589, 592.

See also *Raebel v. Fishers Grove Golf Course, Inc.*, 88 S.D. 20, 214 N.W.2d 785; *Beck v. Wessel*, S.D., 237 N.W.2d 905; Smyser, "The Rule 50(b) Judgment Notwithstanding the Verdict—Its Function and Criteria in South Dakota," 21 S.D.L.Rev. 103 (1976); Currie, "Thoughts on Directed Verdicts and Summary Judgments," 45 U.Chi.L.Rev. 72 (1977).

■ We conclude that the trial court was correct in entering judgment notwithstanding the verdict. Appellant does not challenge the competency or relevancy of plaintiff's evidence on damages. He bases his argument solely on the premise that his evidence suggesting that plaintiff might have learned of his inability to perform in

---

* Because appellant makes no contention that SDCL 57–3–4 would have rendered the proffered evidence admissible, we express no opinion on the effect, if any, that that provision of the Uniform Commercial Code might have in liberalizing the admissibility of parol evidence to explain or supplement a written agreement. See White and Summers, Handbook of the Law Under the Uniform Commercial Code §§ 2–9, 2–10 (1972).

the late summer of 1974 created an issue of fact of the reasonableness of plaintiff's course of action in settling its own claims. Appellant, however, introduced no evidence of market prices for August of 1974 or for any other period of time. The burden of proving that damages would have been lessened by the exercise of reasonable diligence on the part of the claimant is on the party that caused the damages. *Northwestern Engineering Co. v. Ellerman*, 71 S.D. 236, 23 N.W.2d 273; *Kowing v. Williams*, 75 S.D. 454, 67 N.W.2d 780. Here, appellant simply presented no evidence from which the jury could have fixed damages in an amount other than the amount shown by plaintiff's evidence, and appellant can therefore point to no prejudice resulting to him from any delay in plaintiff's procurement of cover. See *Farmers Elevator Co. v. Lyle*, S.D., 238 N.W.2d 290.

■ Although we have stated that the question of damages is strictly a jury question, see, e. g., *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836; *Kamp Dakota, Inc. v. Salem Lumber Co., Inc.*, S.D., 237 N.W.2d 180, that general statement of law is qualified by the implicit assumption that reasonable minds could reach differing conclusions on the basis of the evidence submitted. That was not the situation in the instant case, however, for as we have already stated there was absolutely no evidence submitted from which the jury could reasonably have concluded that plaintiff's damages were other than the amount of money it was required to pay in order to compromise its obligations to the Pillsbury Company. Unlike the *Kamp Dakota* case, supra, plaintiff's evidence on the question of damages did not consist of the opinion of an expert witness that in turn was based upon undisclosed hearsay evidence, but rather consisted of documentary proof, the accuracy of which we do not understand appellant to challenge. No issue of witness credibility remained for jury determination, nor was there any question of mitigation of damages. Cf. *Foland v. Dugan*, 74 S.D. 586, 57 N.W.2d 166. In short, reasonable minds could not have differed on the amount of plaintiff's loss, for there was no basis upon which the jury could rationally have arrived

at a verdict other than in the amount established by plaintiff's evidence. That being the case, the trial court correctly determined that the principles expressed by this court in *Jerke v. Delmont State Bank*, 54 S.D. 446, 223 N.W. 585, warranted the entry of judgment notwithstanding the verdict, for as the court stated in the *Jerke* case,

"[T]he rule of reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict, and the direction of such verdict should not be prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit." ·54 S.D. at 467, 223 N.W. at 594.

See *Fornara v. Wolpe*, 26 Ariz. 383, 226 P. 203; *Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 546 P.2d 798; *Fargo Loan Agency v. Larson*, 53 N.D. 621, 207 N.W. 1003; *Strain v. Shields*, 63 S.D. 60, 256 N.W. 268.

Appellant's contention that the contracts are unenforceable because they lacked consideration is without merit.

The judgment is affirmed.

DUNN, C. J., and PORTER and MORGAN, JJ., concur.

ZASTROW, J., dissents.

ZASTROW, Justice (dissenting).

I respectfully dissent from the majority decision.

Paragraph (5) of the contract provides: The owner hereby covenants with the Purchaser that he is the lawful owner of said commodities and that the same are free from all liens except *none* and that he has good right to sell the same as aforesaid, and that he will warrant and

defend the same against the lawful claims and demands of all persons.

A fair reading of paragraph (5) would lead one to understand that the contract is for the sale of commodities then in the possession of the seller. Certainly, paragraph (5) qualifies any indication in paragraph (1) that any corn of a similar grade might be delivered to the buyer to satisfy the contract. The contract is just as unclear, indefinite and incomplete as the contracts in *McCaull-Webster Elev. Co. v. Steele Bros.,* 43 S.D. 485, 180 N.W. 782, and *Unke v. Thorpe,* 75 S.D. 65, 59 N.W.2d 419, where this court considered the "surrounding circumstances" to "interpret its provisions."

I would allow the pre-contract conversations to be admitted since they would have shown that "said commodities" of which Schuer was the "lawful owner" was intended to refer to the corn in the defendant's field.