**Robert F. DRAKE, Plaintiff and Appellee,**

v.

**GEOCHEMISTRY AND ENVIRONMENTAL CHEMISTRY RESEARCH, INC., Defendant and Appellant.**

No. 13934.

Supreme Court of South Dakota.

Considered on Briefs April 19, 1983.

Decided July 27, 1983.

John M. Fousek of Groves & Fousek, Rapid City, for plaintiff and appellee.

Wayne F. Gilbert of Lehnert & Gilbert, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment in favor of the employee in a breach of an employment contract action. We affirm.

Appellant, Geochemistry and Environmental Chemistry Research, Incorporated (GECR), is a company formed in 1980 and located in Rapid City, South Dakota. GECR, which is owned by Dr. Gergely Markos and Ms. Kathryn J. Bush, does government contract work through the United States Department of Energy to contribute to the Remedial Action Program of Uranium Mill Tailings of the Congressional Act of 1978. GECR also does government contract work for the Bureau of Mines.

Dr. Markos contacted Dr. Robert Drake, appellee, in February of 1981 regarding a research chemist position with GECR. At that time Dr. Drake had a tenure track teaching position at Moorehead State College in Minnesota. Following a meeting with Dr. Markos and Ms. Bush in Rapid City, Dr. Drake wrote to them on March 12, 1981, outlining the considerations bearing upon his decision to accept a position with GECR, including the security of his contract with the college. In the concluding paragraphs of this letter Dr. Drake stated, "Would it be too much to ask that you put your offer in writing, stating whatever salary and benefits there are, in the form of an initial one-year contract." In response to this request, Dr. Drake received a letter from Dr. Markos and Ms. Bush, dated April 7, 1981, that stated in part:

> We would like to offer you a one-year contract as a research chemist paying $28,000.00 per annum, beginning summer 1981. Your work will include setting up, developing and supervising laboratory and analytical techniques, involvement in our data analysis and interpreting migration processes of chemical components in soils and tailings, and development and interpretation of extraction processes from natural and waste materials. The starting date for employment is negotiable, but joining us before August 1 is essential for timely beginning of the research projects for FY 1982. If after one year the work situation is agreeable for both yourself and us, the contract will be renewed.

On April 29, 1981, Dr. Drake responded with a letter in which he inquired whether GECR's three-month probationary period was being superseded by the offer of a one-year contract. Ms. Bush replied by letter dated May 4, 1981, which stated in part, "Yes, you do assume correctly, the three-month 'probationary period' is, in your case, superceded [sic] by the 'one-year contract.' "

Although Dr. Markos was aware of the chance that the government contracts would not be renewed when he first discussed a GECR position with Dr. Drake, he did not inform Dr. Drake of this possible problem. Likewise, when asked by Dr. Drake about the stability of GECR's finances, Ms. Bush responded by saying that

although there is always a chance that government contracts will not be awarded, things looked very good. Dr. Drake testified that he had been assured that GECR was involved in continuing projects.

Dr. Drake was granted leave from Moorhead State College and began work for GECR on July 21, 1981. Within a month of his arrival at GECR, he first became aware that GECR was having financial difficulties because of contract renewal problems. GECR was subcontracting through the University of Colorado on contracts with the Bureau of Mines and the Department of Energy. Both of these contracts expired September 30, 1981. GECR had written a proposal for a new contract with the Bureau of Mines, and the Department of Energy contract had previously been renewed on a year-to-year basis. In late August of 1981, GECR was informed that the contract between the University of Colorado and the Department of Energy would not be renewed. In late September or early October of 1981, GECR was informed that it did not receive the Bureau of Mines contract. GECR, however, continued to work under the premise that there would be a prime contract awarded to GECR from the Department of Energy and that it would be backdated to be effective October 1, 1981. In early December 1981, GECR learned that if and when it was awarded the Department of Energy contract would not be backdated to October 1, 1981.

In a letter dated December 10, 1981, Dr. Drake was informed that due to a delay in receiving a Department of Energy contract, and because such contract, if renewed, would not be backdated, GECR had no basis for the continuation of its research efforts and would be required to terminate Dr. Drake's employment on December 11, 1981.

Dr. Drake found employment at South Dakota School of Mines and Technology for the second semester and summer of 1982. After considering this evidence of mitigation, the trial court found that Dr. Drake

was entitled to judgment for breach of contract in the amount of $6,645.87 plus costs and disbursements.

■ GECR contends that the employment contract was terminated by operation of SDCL 60–4–2 which provides: "Every employment is terminated ... (2) By extinction of its subject ...." In this case, however, there was no extinction of the subject of the contract. Although, for whatever reason,* the government funding was delayed, GECR continued in business and in fact received the Department of Energy contract in May of 1982. At the time of trial, $70,000 in accounts receivable was due from the University of Colorado. Since GECR continued to exist and was eventually funded to do the type of work for which Dr. Drake was hired, we cannot say that the subject matter of the employment ceased to exist. Dr. Drake was hired as a research chemist. The one-year contract was not conditioned upon the performance of work on any specific project, and we are not inclined to read such a limitation into it. That GECR may have been temporarily without work in the area of Dr. Drake's expertise was a risk GECR undertook to accept. Accordingly, we conclude that SDCL 60–4–2(2) is inapplicable to the facts in this case.

■ Likewise, we are unpersuaded by GECR's defense of impossibility of performance. GECR cites *Unke v. Thorpe,* 75 S.D. 65, 59 N.W.2d 419 (1953), in support of this position. We find that case to be inapposite, however, inasmuch as the contract in the instant case, as we have already pointed out, was not conditioned upon the continued existence of any specific projects. Dr. Markos and Ms. Bush knew full well that there was a possibility that the government contracts might not be renewed. Notwithstanding that knowledge, they were willing to offer Dr. Drake a one-year "no cut" contract, and GECR must now be held to fulfill its portion of the bargain. As the Supreme Court of Iowa has held, "[O]rdi-

---

* Although the trial court made no determination regarding the cause of the delay in funding, employee presented evidence that the delay occurred because GECR's accounting system was unacceptable for government contracting.

narily a contingency which reasonably may have been anticipated must be provided for by the terms of the contract, or else the impossibility of performance resulting therefrom does not operate as an excuse." *Nora Springs Co-op Co. v. Brandau,* 247 N.W.2d 744, 747 (Iowa 1976).

We have reviewed the numerous findings of fact that GECR contends are in error and conclude that they are not clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

The judgment is affirmed.

All the Justices concur.