#25770, #25787-rev & rem-GAS

**2011 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ARROWHEAD RIDGE I, LLC,       Plaintiff and Appellant,

  v.

COLD STONE CREAMERY, INC.,
Franchise location: 5416 E. Arrowhead Pkwy
Sioux Falls, SD  57110,        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

TIMOTHY J. GRANDE of
Mackall, Crounse & Moore, PLC
Minneapolis, Minnesota
 and
SAMUEL R. ASSAM
Sioux Falls, South Dakota      Attorneys for plaintiff
               and appellant.

STEVEN W. SANFORD of
Cadwell, Sanford, Deibert
 & Garry, LLP
Sioux Falls, South Dakota      Attorneys for defendant
               and appellee.

\* \* \* \*

ARGUED ON MAY 24, 2011

OPINION FILED **07/06/11**

SEVERSON, Justice

[¶1.]        Arrowhead Ridge I, L.L.C. initiated this forcible entry and detainer action when its tenant, Cold Stone Creamery, Inc., defaulted on its lease.  The trial court granted Arrowhead partial summary judgment, concluding that it was entitled to seventeen months of unpaid rent and late fees.  The issues of mitigation of damages, interest, and attorneys' fees proceeded to trial.  After a court trial, the trial court concluded that Arrowhead failed to mitigate its damages due solely to an exclusivity provision in a lease with another tenant.  The trial court also concluded that Arrowhead could not recover its attorneys' fees under either the terms of the lease or South Dakota law.  The trial court denied the parties' motions for a new trial.  We reverse and remand.

## Background

[¶2.]        F&K Assam Family, L.L.C. owned a parcel of land in a growing commercial area in eastern Sioux Falls.  Between 2002 and 2004, F&K sought to develop the property by building a retail center.  Because F&K's lender required signed leases for approximately half of the retail center before funding the project, F&K solicited and obtained executed leases with three national or regional companies before construction.

[¶3.]        Cold Stone was one of three tenants F&K acquired before construction.  In February 2004, Cold Stone contacted F&K to negotiate a lease and delivered a draft letter of intent for lease of space in the retail center.  The letter proposed "Cold Stone Creamery Leasing, Inc., a company with no assets and no liabilities," as the tenant for the property.  The letter proposed no guarantors.  F&K notified Cold

Stone that it would only lease to a substantial tenant who had the financial ability to pay rent over the full term of the lease. Cold Stone thus informed F&K that it would be the tenant. Negotiations continued through May 2004 with both parties making changes to a proposed lease. Subsequent drafts of the proposed lease identified Cold Stone as the tenant.

[¶4.]    In June 2004, Cold Stone notified F&K that company policy required a twelve-month limitation of liability in the event of default. F&K was willing to limit Cold Stone's liability to eighteen months if Cold Stone's prospective franchisees, Ed and Cindy Reesman, signed the lease and provided current financial statements demonstrating their financial ability to fully perform the lease. F&K forwarded a draft incorporating this agreement to Cold Stone but left Cold Stone as the tenant and primary obligor on the lease until it received the Reesmans' financial statements. In August 2004, Cold Stone informed F&K that it need not worry about the Reesmans' financial statements because it would be liable for the entire lease term. Cold Stone signed the lease as both tenant and guarantor. F&K assigned its interest in the lease to Arrowhead in October 2005.

[¶5.]    Cold Stone sublet the leased premises to the Reesmans, who operated a Cold Stone franchise at the location until early 2007. When Cold Stone defaulted on the lease in June 2007, Arrowhead commenced this forcible entry and detainer action. Neither Cold Stone nor the Reesmans were in actual possession of the leased premises when Arrowhead commenced this action.

[¶6.]    Arrowhead began efforts to lease the premises to another tenant. It posted signs indicating that the space was available, circulated a data sheet to

commercial real estate brokers in Sioux Falls, and made calls to advise that the premises was available. A variety of possible tenants contacted Arrowhead about the premises, including a cigar lounge, a beauty parlor, a tanning salon, two sandwich restaurants, a pizza buffet restaurant, two Chinese restaurants, a cell phone distributor, and a bank. Although the pizza buffet restaurant was interested, Arrowhead was unable to lease the premises due to an exclusivity provision in its lease with HuHot, an Asian-style buffet restaurant located in the retail center.[1] By the time of trial, the premises had been vacant for nearly two years.

[¶7.] In January 2009, the trial court granted Arrowhead partial summary judgment, concluding that it was entitled to seventeen months of unpaid rent and late fees. The issues of mitigation of damages, interest, and attorneys' fees proceeded to trial in April 2009. After hearing evidence about the lease negotiations and Arrowhead's efforts to lease the premises to another tenant, the trial court concluded that Arrowhead failed to mitigate its damages due solely to the exclusivity provision in its lease with HuHot. The trial court also concluded that Arrowhead could not recover its attorneys' fees under either the terms of the lease or South Dakota law. The trial court denied the parties' motions for a new trial.

---

1. Cold Stone's lease also contained an exclusivity provision:

> Landlord agrees not to sell, lease, let use or permit to be used, any other property owned or controlled by it within the Retail Center now or at any time during the period of this Lease or any extension to any entity whose primary business is retail sales of ice cream, frozen yogurt, frozen desserts or any other directly competing products. This includes but is not limited to; other ice cream stores, other frozen yogurt stores and ice cream/yogurt vending units whether freestanding or in kiosks.

## Standard of Review

[¶8.]      Arrowhead and Cold Stone appeal from the trial court's denial of their motions for a new trial. SDCL 15-6-59(a) provides that a new trial may be granted for:

> . . .
>
> (6)      Insufficiency of the evidence to justify the verdict or other decision or that is against law;
>
> (7)      Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof, or a motion to strike.

"The decision to grant a new trial is left [to] the sound judicial discretion of the trial court" and is therefore reviewed under the abuse of discretion standard. *Sherburn v. Patterson Farms, Inc.*, 1999 S.D. 47, ¶ 8, 593 N.W.2d 414, 416 (citing *Harter v. Plains Ins. Co., Inc.*, 1998 S.D. 59, ¶ 9, 579 N.W.2d 625, 629).

## Analysis and Decision

### *Appeal #25787*

[¶9.]      Cold Stone filed a notice of review, challenging the trial court's denial of its motion for a new trial.

[¶10.]      **1.      Whether Arrowhead and Cold Stone entered into a valid and enforceable lease.**

[¶11.]      Cold Stone moved for a new trial on the basis that the trial court erred by concluding that Arrowhead and Cold Stone entered into a valid and enforceable lease. "To form a contract, there must be a meeting of the minds or mutual assent on all essential terms." *Melstad v. Kovac*, 2006 S.D. 92, ¶ 21, 723 N.W.2d 699, 707

(quoting *Jacobson v. Gulbransen*, 2001 S.D. 33, ¶ 22, 623 N.W.2d 84, 90). "'Mutual assent refers to a meeting of the minds on a specific subject' and 'does not exist unless the parties all agree upon the same thing in the same sense.'" *Id.* (quoting *Read v. McKennan Hosp.*, 2000 S.D. 66, ¶ 25, 610 N.W.2d 782, 786). "To determine whether there was mutual assent, 'the court looks at the words and conduct of the parties.'" *Id.* (quoting *Jacobson*, 2001 S.D. 33, ¶ 22, 623 N.W.2d at 90). "Whether the parties had a meeting of the minds is a question of fact" reviewed under the clearly erroneous standard. *Id.* (citation omitted).

[¶12.]     Cold Stone argues that the lease provisions regarding the limitation of liability and interest rate chargeable on unpaid rent and fees are inconsistent, demonstrating a lack of mutual assent on all essential terms of the lease. The lease provides that Cold Stone is liable for the entire lease term, but the lease guaranty limits Cold Stone's liability as guarantor to eighteen months. And while one lease provision sets the chargeable interest rate at eighteen percent, another provision sets the interest rate at three points over Wells Fargo's then-prevailing prime interest rate.

[¶13.]     Recognizing the ambiguity these inconsistencies create, Arrowhead presented evidence at trial regarding the parties' intent when signing the lease. Ordinarily, "[p]arol or extrinsic evidence may not be admitted to vary the terms of a written instrument or to add to or detract from the writing." *Brookings Mall, Inc. v. Captain Ahab's, Ltd.*, 300 N.W.2d 259, 262 (S.D. 1980) (quoting *Jensen v. Pure Plant Food Int'l, Ltd.*, 274 N.W.2d 261, 263-64 (S.D. 1976)). "When the writing is uncertain or ambiguous, however, such evidence is admissible to explain the

instrument." *Id.* (citing *Christiansen v. Strand,* 81 S.D. 187, 192-93, 132 N.W.2d 386, 388-89 (1965)). "In other words, [parol] evidence is resorted to where the ambiguity may be dispelled to show what [the parties] meant by what they said but not to show that [they] meant something other than what they said." *Id.* (citation omitted).

[¶14.] Cold Stone offered no credible evidence or testimony regarding its intent when entering into the lease.[2] As to the limitation of liability, Arrowhead established that the parties intended that the lease contain no limitation of liability. As to the interest rate chargeable on unpaid rent and fees, Arrowhead established that it used a lease for one of its Iowa properties as a template for the lease in this case. The lease provision setting the chargeable interest rate at three points over Wells Fargo's then-prevailing prime interest rate was mistakenly inserted. The trial court thus found that the parties intended that Cold Stone be liable for the entire lease term and that the chargeable interest rate be eighteen percent. Because the record supports these findings, the trial court did not abuse its discretion by denying Cold Stone's motion for a new trial on the basis that the parties did not enter into a valid and enforceable lease.

*Appeal #25770*

[¶15.]  **1.**   **Whether Arrowhead failed to mitigate its damages due solely to an exclusivity provision in a lease with another tenant.**

---

2.  Cold Stone offered business records evidencing its intent at the time it signed the lease into evidence, but the trial court placed little weight on the records because they lacked foundation and Cold Stone offered no admissible testimony interpreting them.

[¶16.] Arrowhead moved for a new trial on the basis that the trial court erred by concluding that it failed to mitigate its damages due solely to the exclusivity provision in its lease with HuHot. We have generally described the duty to mitigate damages caused by a breach of contract or tort:

> The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertion to render the injury as light as possible. If, by his negligence or willfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him. This is a practical duty under a great variety of circumstances, and, as the damages which are suffered by a failure to perform it are not recoverable, it is a duty of great importance.

*Ducheneaux v. Miller*, 488 N.W.2d 902, 917 (S.D. 1992) (quoting *Gardner v. Welch*, 21 S.D. 151, 110 N.W. 110, 112-13 (1906)). This Court has yet to specifically consider whether a landlord must mitigate damages if a tenant defaults on a lease.

[¶17.] The traditional common-law rule dictates that a landlord has no duty to mitigate damages. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 295 (Tex. 1997) (citation omitted). At common law, tenants possess an interest in land and have the right to bring real property causes of action against their landlord. *Id.* at 297 (citation omitted). "[T]he tenant is owner of the property during the lease term[.]" *Id.* at 295-96 (citing *Reid v. Mut. of Omaha Ins. Co.*, 776 P.2d 896, 902, 905 (Utah 1989)). "As long as a tenant has a right to possess the land, [he] is liable for rent." *Id.* at 296 (citation omitted). Thus, "a landlord is not obligated to undertake any action following a tenant's abandonment of the premises but may recover rents periodically for the remainder of the term." *Id.* (citing *Gruman v. Inv. Diversified Servs.*, 247 Minn. 502, 78 N.W.2d 377, 379-80 (1956)).

Only a handful of states have explicitly retained the common-law rule that a landlord has no duty to mitigate damages. *Id.* at 297.

[¶18.]    The vast majority of modern jurisdictions recognize a landlord's duty to mitigate damages. *Id.* at 296. Because "leases have become more complex and the structures on the land have become more important" than the land, "courts have begun to recognize that a lease possesses elements of both a contract and a conveyance." *Id.* at 297-98 (citing *Schneiker v. Gordon*, 732 P.2d 603, 607-09 (Colo. 1987); *Reid*, 776 P.2d at 902-04). Due to the "contractual elements of the modern lease," many courts have held that a landlord has a contractual duty to mitigate damages when a tenant breaches a lease and abandons the premises. *Id.* at 298. A landlord is treated as any other aggrieved party to a contract. *Id.* at 299.

[¶19.]    In the present case, the lease specifically addresses Arrowhead's affirmative duty to mitigate its damages in the event of Cold Stone's default:

> Notwithstanding the foregoing, if Tenant shall default under the Lease beyond any applicable notice and cure period, Landlord shall have an affirmative duty to mitigate its damages and in no event may Landlord accelerate the rent due for a remainder of the Lease Term.

Because the lease requires Arrowhead to mitigate its damages, we need not decide whether a landlord has a common-law duty to mitigate damages in South Dakota.

[¶20.]    We thus proceed to the question whether the trial court properly concluded that Arrowhead failed to mitigate its damages due solely to the exclusivity provision in its lease with HuHot. As the breaching party, Cold Stone bore the burden of proving that Arrowhead's damages "would have been lessened by the exercise of reasonable diligence." *See Ducheneaux*, 488 N.W.2d at 918 (citing

*Hepper v. Triple U Enter., Inc.*, 388 N.W.2d 525, 530 (S.D. 1986); *Renner Elevator Co. v. Schuer*, 267 N.W.2d 204, 207 (S.D. 1978)). Although Cold Stone bore the burden of proof, it did not present evidence on the issue of mitigation at trial. Rather, Arrowhead presented undisputed evidence of its efforts to lease the premises to another tenant. As a result of its efforts, a variety of possible tenants contacted Arrowhead. Although a pizza buffet restaurant was interested, Arrowhead was unable to lease the premises due to the exclusivity provision in its lease with HuHot.

[¶21.] We cannot find any reported cases on the precise question whether a landlord breaches his duty to mitigate damages solely by complying with an exclusivity provision in a lease with another tenant. But courts widely agree that a landlord is not required to lease the premises to just any willing tenant. *Frenchtown Square P'ship v. Lemstone, Inc.*, 99 Ohio. St. 3d 254, 259, 2003-Ohio-3648, 791 N.E.2d 417, at ¶ 19 (emphasizing that a landlord is not required to accept any available tenant); *Austin Hill*, 948 S.W.2d at 298 ("[T]he landlord therefore should not be forced to lease to an unwanted tenant."); *Brennan Assoc. v. OBGYN Specialty Grp., P.C.*, 127 Conn. App. 746, 754, 15 A.3d 1094, 1101 (2011) ("The duty to mitigate damages does not require the landlord to sacrifice any substantial right of [his] own or to exalt the interests of the tenant above [his] own."). In determining whether to lease the premises to a replacement tenant, a landlord may consider whether the tenant is suitable under all the circumstances. *Frenchtown Square*, 99 Ohio St. 3d at 259, 791 N.E.2d at 421, at ¶ 19.

[¶22.]     The exclusivity provision in the lease with HuHot was the sole finding supporting the trial court's conclusion that Arrowhead failed to mitigate its damages. But Arrowhead was only required to mitigate its damages "by the exercise of reasonable diligence." *See Ducheneaux*, 488 N.W.2d at 918. It was not reasonable to require Arrowhead to breach its lease with HuHot and expose itself to potential liability. Other than the exclusivity provision, the undisputed evidence at trial established that Arrowhead made substantial efforts to lease the premises to another tenant. The trial court abused its discretion by denying Arrowhead's motion for a new trial. But we do not believe that a new trial is necessary on the issue of mitigation as the record establishes that Arrowhead mitigated its damages by the exercise of reasonable diligence as a matter of law. *See id.*

[¶23.]     **2.     Whether Arrowhead may recover the attorneys' fees it incurred due to Cold Stone's default under either the terms of the lease or South Dakota law.**

[¶24.]     Arrowhead moved for a new trial on the basis that the trial court erred by concluding that it could not recover the attorneys' fees it incurred due to Cold Stone's default under either the terms of the lease or South Dakota law. The decision to award attorneys' fees in a particular case is within the trial court's sound judicial discretion and is therefore reviewed under the abuse of discretion standard. *Credit Collection Servs., Inc. v. Pesicka*, 2006 S.D. 81, ¶ 5, 721 N.W.2d 474, 476 (citing *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 27, 707 N.W.2d 85, 97).

[¶25.]     In South Dakota, the recovery of attorneys' fees is governed by the American rule, which provides that each party bears his attorneys' fees. *Id.* ¶ 6

(quoting *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 26, 687 N.W.2d 507, 513). But an award of attorneys' fees is allowed when authorized by the parties' agreement or by statute. *Id.* (citation omitted). *See* SDCL 15-17-38.[3] Thus, even if no statute authorizes an award of attorneys' fees, "they are recoverable if the parties' contract so provides." *Pesicka*, 2006 S.D. 81, ¶ 6, 721 N.W.2d at 477 (citing *Microsoft*, 2005 S.D. 113, ¶ 29, 707 N.W.2d at 98) (additional citations omitted). The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence. *Id.* (quoting *Jacobson*, 2001 S.D. 33, ¶ 31, 623 N.W.2d at 91).

[¶26.] Arrowhead first argues that an award of the attorneys' fees it incurred due to Cold Stone's default is authorized by South Dakota law. Arrowhead commenced a forcible entry and detainer action under SDCL 21-16-1(4) to terminate Cold Stone's legal right to possession of the premises.[4] As authorized by SDCL 21-16-4, Arrowhead joined its claim for rents and damages to its forcible entry and

---

3. SDCL 15-17-38 provides in part:

> The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties. However, attorneys' fees may be taxed as disbursements if allowed by specific statute.

4. SDCL 21-16-1(4) provides that a landlord may bring an action of forcible entry and detainer if a tenant fails to pay his rent for three days after it is due.

detainer action.[5]   Because SDCL 21-16-11 authorizes an award of attorneys' fees in forcible entry and detainer actions, Arrowhead contends that it is entitled to an award of its attorneys' fees.

[¶27.]     SDCL 21-16-11 authorizes an award of attorneys' fees for forcible entry and detainer actions but does not specifically authorize an award for collateral claims:

> In any case of forcible entry and detainer, or detainer only, the court may tax as part of the costs in the case, to the prevailing party, reasonable attorney[s'] fees, whether a trial is had or not, if [the] prevailing party is represented by a licensed attorney.

Arrowhead did not demonstrate for the trial court what portion of its attorneys' fees was attributable to the forcible entry and detainer action apart from its collateral claim for rents and damages.  We therefore review the trial court's denial of an award of Arrowhead's attorneys' fees under the terms of the lease.

[¶28.]     Arrowhead argues that the lease authorizes an award of the attorneys' fees it incurred due to Cold Stone's default.  The lease provision on which Arrowhead relies provides:

> All taxes, charges, costs, and expenses that Tenant assumes or agrees to pay hereunder, together with all interest and penalties that may accrue thereon in the event of the failure of Tenant to pay those items, and all other damages, costs, expenses, and sums that Landlord may suffer or incur, or that may become due, by reason of any default of Tenant or failure by Tenant to

---

5.     SDCL 21-16-4 provides:

> An action under the provisions of this chapter cannot be brought in connection with any other except for rents and profits or damages but the plaintiff may bring separate actions for the same if he so desires.

> comply with the terms and conditions of this Lease shall be deemed to be additional rent, and in the event of nonpayment, Landlord shall have all the rights and remedies as herein provided for failure to pay rent.

This lease provision does not expressly mention attorneys' fees.

[¶29.] In examining the plain language of the lease provision, we disagree with Arrowhead's contention that it contains an agreement authorizing an award of its attorneys' fees. It is true that an implied agreement may authorize an award of attorneys' fees. *See* SDCL 15-17-38 (the compensation of attorneys is left to the express or implied agreement of the parties). But this lease not only fails to expressly mention attorneys' fees, it also does not imply an agreement regarding attorneys' fees. Thus, the trial court did not abuse its discretion by denying Arrowhead's motion for a new trial on the basis that it could recover the attorneys' fees it incurred due to Cold Stone's default.

[¶30.] Reversed and remanded to enter judgment consistent with this opinion.

[¶31.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MEIERHENRY, Retired Justice, concur.